FILED
2019 Jun-17  PM 08:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| ANITA BERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:18-cv-00356-JEO |
| v. | ) |
| | ) |
| FIRST STATE BANK OF DEKALB | ) |
| COUNTY INC., et al., | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF CELESTINA GOBIN

I, Celestina Gobin, hereby make this Declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am over the age of twenty-one and otherwise competent to testify to the matters stated herein.

2.      I am employed by Equifax, Inc., the parent company of Defendant Equifax Information Services, LLC ("Equifax"), as a Legal Support Leader for Equifax.

3.      I have worked for Equifax for more than 20 years.

4.      I have personal knowledge of the facts stated herein based on my work experiences at Equifax and my review of documents and records kept by Equifax in the ordinary course of its business.

1

5.     I have reviewed Equifax's records concerning the credit file of Plaintiff, Ms. Anita Betty.

6.     I have also reviewed Ms. Berry's Complaint and am generally familiar with the allegations made therein.

7.     I am authorized to provide this declaration in support of Equifax's Motion for Summary Judgment.

## I.     Equifax's Documents

8.     I am familiar with Equifax's documents and records including consumer submitted documents (such as dispute letters and documents submitted with disputes), Automated Consumer Interview System ("ACIS") cases, Automated Consumer Dispute Verifications ("ACDVs"), and Automated Universal Data forms ("AUDs").

9.     Consumer submitted documents, ACIS Cases, ACDVs, and AUDs are taken from Equifax's business records. I have personal knowledge of Equifax's procedures for creating these records. I use these document systems and these records frequently as part of my job. ACIS Cases, ACDVs, and AUDs are made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge. It is the regular practice of Equifax to make such records. Consumer submitted documents, ACIS Cases,

2

ACDVs, and AUDs are kept in the course of Equifax's regularly conducted business activities.

## I.   Equifax

10.   Equifax is a consumer reporting agency ("CRA") as defined by the Fair Credit Reporting Act ("FCRA").

11.   As such, it gathers information about consumers from various sources, including banks, collection agencies, and court records, which it uses to create credit files on more than 200 million consumers, including Ms. Berry, in the United States.

12.   Equifax uses that information to prepare consumer reports, as that term is defined by the FCRA, for use by its subscribers in evaluating the potential credit risk of consumers, among other permissible purposes under the FCRA.

## II.   Equifax's Reasonable Procedures for Assuring Maximum Possible Accuracy

13.   Equifax maintains detailed procedures designed to assure maximum possible accuracy of the information contained in consumer reports that it provides to its subscribers concerning consumers.

14.   Equifax accepts credit information only from those sources of information that it has determined to be reasonably reliable based upon Equifax's own investigation, the source's reputation in the community, and/or Equifax's longstanding business relationship with each source.

15.     When Equifax receives a request from a company to become a data furnisher, it generally conducts an extensive investigation to ensure that the company is reliable.

16.     Each company must typically complete a detailed application and sign a subscriber agreement, which requires the company to certify that it will obtain consumer reports only in accordance with permissible purposes under the FCRA and that it will otherwise comply with all FCRA requirements, including the requirement that it investigate consumer disputes.

17.     The subscriber agreement also requires data furnishers to supply only accurate, up-to-date information.

18.     Upon receipt of an application, subscriber agreement, and valid business license, Equifax's new-accounts department conducts an investigation of the company, which may include an onsite visit, to determine the company's legitimacy and reliability.

19.     Equifax obtains consumer credit information from data furnishers in a standard electronic format.

20.     Upon receipt of such data, Equifax conducts a series of computerized quality checks before adding the data to its consumer database.

21.    These checks are designed to determine whether the data is in the proper format and whether the data as a whole deviates from expected norms (based on past experience with the particular source).

### III.   Equifax's Procedures to Conduct Reasonable Reinvestigations to Correct Errors That Are Brought to Its Attention

22.    Equifax maintains detailed policies and procedures designed to assure that it conducts reasonable reinvestigations of information disputed by consumers as inaccurate.

23.    A consumer may contact Equifax to request a consumer disclosure or dispute information reporting in his or her credit file by telephone, mail, or through an Internet portal on Equifax's website.

24.    The individuals that handle consumer disputes must undergo a training process whereby they are trained on the reinvestigation policies and procedures created by Equifax.

25.    When Equifax receives a dispute, it assigns each dispute a unique confirmation number.

26.    After locating the consumer's credit file, Equifax opens an ACIS case that tracks the process of the reinvestigation.

27.    Equifax then reviews and considers all relevant information including documentation, if any, provided by the consumer and reviews the contents of the consumer's credit file.

28.    If Equifax is able to make updates based on the information it has, it will do so.

29.    This may occur, for example, when the consumer has changed a name or address and provides Equifax with sufficient proof of the change to allow it to add the updated name or address to the credit file.

30.    Another example is that Equifax will remove a former address disputed by a consumer, even without requiring the consumer to provide any additional identifying information demonstrating that the address is no longer correct.

31.    If further investigation is required, Equifax notifies the source of the account information (referred to as the "data furnisher") of the consumer's dispute, identifies the nature of the consumer's dispute, and includes the consumer's account information as it then appears in Equifax's credit file.

32.    These communications are generally made through a process wherein Equifax transmits an ACDV form by electronic mail.

33.    An ACDV is an electronic form used to record and transmit consumer disputes to data furnishers.

34.    If the consumer provided Equifax documents that support his or her dispute, Equifax will include the documents with the ACDV that it sends to the furnisher.

35.    The ACDV electronic mail process allows consumer reporting agencies to communicate with data furnishers through use of an array of pre-defined codes and narrative phrases.

36.    This standardized process enhances consistency and reduces misunderstandings, which otherwise would be significant given the large number of disputes processed by Equifax and the other CRAs every day.

37.    When the data furnisher receives the dispute from Equifax, it is generally required, both by its contract with Equifax and by the FCRA, to conduct its own investigation into the accuracy of the disputed information and report the results back to Equifax.

38.    If the data furnisher advises Equifax to delete or otherwise update the account information, then Equifax takes the necessary action and notifies the consumer.

39.    Upon completion of the reinvestigation, Equifax sends the consumer the results along with a summary of the consumer's rights under the FCRA, additional steps the consumer may take, and a description of the procedures used to reinvestigate the dispute.

## IV.  MS. BERRY'S DISPUTED ACCOUNT

40.    First State Bank of DeKalb County Inc. ("FSB") reported an account to Equifax for Ms. Berry bearing account number ending in 3164 ("Account").

41.    In September 2007, FSB first reported the Account to Equifax.

42.    FSB is an entity that Equifax has determined to be a reliable source of information based upon the history of their relationship and FSB's agreement to the terms of the subscriber agreement.

## V.    EQUIFAX REINVESTIGATED MS. BERRY'S DISPUTE CONCERNING THE ACCOUNT.

43.    Equifax's records show that it received the below dispute from Ms. Berry and that it reviewed and responded to it as described below.

44.    On February 5, 2018, Equifax received a letter dated January 31, 2018, from Ms. Berry disputing information concerning two accounts: (1) the Account, and (2) a Synd Office account (original creditor Brookwood Medical Center). As to the information concerning the Account tradeline, Ms. Berry's letter stated:

> I had a mortgage loan with First State Bank of DeKalb County. Currently my credit report is showing· that my payments on ·that loan were 60 days late as of September 2017. This is inaccurate. I made a payment on August 25, 2017 and then **paid the loan off in full** on September 18, 2017. I am including a copy of my payment history along with a copy of the satisfaction of the lien. You will note that the lien was satisfied on September 21, 2017. This mortgage loan was not 60 days late. Especially given that the mortgage was paid off in full less than 30 days from the first alleged late payment.

> I am asking pursuant to the Fair Credit Reporting Act that you investigate First State Bank of DeKalb County's entry on my credit report and respond to me as provided by the Fair Credit Reporting Act. To assist your investigation, my birth date is [REDACTED] 1959

and the last four digits of my Social Security number are 5677. Please remove this inaccurate information from my credit report.

(A true and correct copy of Ms. Berry's January 31, 2018 letter, all enclosed documents, and the envelope are collectively attached hereto as Exhibit A).

45.   Enclosed with Ms. Berry's January 31, 2018 letter were two documents: (1) a Full Satisfaction of Recorded Lien, and (2) a Loan History Inquiry. (A true and correct copy of the two single-page documents are included in Exhibit A).

46.   Equifax's records show that at the time it received Ms. Berry's dispute, the Account reported with a status of M1 (green box), which means "Pays As Agreed"," and also reported as "Closed Or Paid Account/Zero Balance."" (yellow box).



47.   The status is the condition of the account when last updated by the creditor or otherwise.

48.     The status of an account is different from the "Account History," also known as "Derog Trade History."

49.     Unlike status, which is a reflection of an account's current condition, "Account History" or "Derog Trade History" is the payment history and historical account information for an account.

50.     The relevant status codes for the account history or trade history of the Account are as follows:

1 = 30-59 Days Past Due
2 = 60-89 Days Past Due
3 = 90-119 Days Past Due

51.     Equifax's records show that at the time it received Ms. Berry's dispute, FSB reported the following Derog Trade History (blue box): 60 days late for September 2017 on the date that FSB reported the Account to Equifax, 30 days late for August 2017, 30 days late for March 2017, 90 days late for February 2017, 60 days late for January 2017, 30 days late for December 2016 and so on all the way back to 30 days late for November 2013.

52.     According to Equifax's records, the individual that handled the dispute, Mr. Umesh Tripathi, noted that Ms. Berry disputed the current balance and/or the amount past due on the Account, but did not note any dispute concerning the late payment reporting for the month of September 2017 on the Account.

10

53.    Mr. Tripathi noted that the Account was reporting as closed and paid in full with a zero balance.

54.    Mr. Tripathi noted that the Synd Office account was not reporting on Ms. Berry's Equifax credit file at that time.

55.    On February 8, 2018, Equifax provided Ms. Berry with its reinvestigation results in which it notified her that FSB was currently reporting a zero balance for the Account, and the Synd Office /Brookwood Medical Center account was currently not reporting on her Equifax credit file.

56.    Equifax did not act to willfully harm Ms. Berry or her credit file.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 12th, 2019, at Atlanta, Georgia.

By: _____

Celestina Gobin

# EXHIBIT A

January 31, 2018

VIA CERTIFIED MAIL

Equifax Information Services, LLC
P. O. Box 740256
Atlanta, GA 30374

To Whom it May Concern:

My name is Anita Barkley Berry and I live at 1381 County Road 249 Fort Payne, Alabama 35967. I have been at that address for over two years. I also use P.O. Box 680604 Fort Payne, Alabama 35968. I am writing to dispute the accuracy of an entry on my credit report. My dispute is as follows:

**1.   FIRST STATE BANK OF DEKALB COUNTY**
**Acct. Number** ~~REDACTED~~ **3164**

I had a mortgage loan with First State Bank of DeKalb County. Currently my credit report is showing that my payments on that loan were 60 days late as of September 2017. This is inaccurate. I made a payment on August 25, 2017 and then **paid the loan off in full** on September 18, 2017. I am including a copy of my payment history along with a copy of the satisfaction of the lien. You will note that the lien was satisfied on September 21, 2017. This mortgage loan was not 60 days late. Especially given that the mortgage was paid off in full less than 30 days from the first alleged late payment.

I am asking pursuant to the Fair Credit Reporting Act that you investigate First State Bank of DeKalb County's entry on my credit report and respond to me as provided by the Fair Credit Reporting Act. To assist your investigation, my birth date is ~~REDACTED~~/1959 and the last four digits of my Social Security number are 5677. Please remove this inaccurate information from my credit report.

**2.   SYND OFFICE (Original creditor BROOKWOOD MEDICAL CENTER)**

There is a collection account showing on my credit report with a balance of $150.00 allegedly owed to Brookwood Medical Center. I do not owe Brookwood Medical Center any money and have not been a patient at Brookwood Medical Center in several years. I dispute the accuracy of this item and request that it be removed from my credit report.

I look forward to hearing from you.

Sincerely,

Anita Barkley Berry

Enclosures

DeKalb County, Alabama
Ronnie Osborn, Judge of Probate
Filed/cert. 9/25/2017 12:15 PM
TOTAL      $    13.50
1 Pages

3097766

TYPE: MISC BOOK: 480 PAGE: 267

State of Alabama
DeKalb County

## FULL SATISFACTION OF RECORDED LIEN

KNOW ALL MEN BY THESE PRESENTS, That, the undersigned FIRST STATE BANK OF DEKALB COUNTY, a banking corporation duly organized and existing under and by virtue of the laws of the State of Alabama, with its principal office at Fort Payne, County of DeKalb, State of Alabama, does hereby acknowledge full payment of the indebtedness secured by those certain mortgages executed by the following and in favor of FIRST STATE BANK OF DEKALB COUNTY, which said mortgages were recorded in the office of the Judge of Probate, DeKalb County, Fort Payne, Alabama, in the following Book, Volume(s) and Page Number(s). The undersigned, does further release and satisfy, in full, the following said mortgages. In Witness Whereof, the said FIRST STATE BANK has caused this instrument to be signed by Randy Moses its Vice President and executed this  21st  day of  SEPTEMBER  , 2017

Name  ROBERT D. AND ANITA L. BERRY          Book  1499        Pages  89

FIRST STATE BANK OF DEKALB COUNTY
FORT PAYNE, ALABAMA

BY:  _____
RANDY MOSES, VICE PRESIDENT

State of Alabama
DeKalb County

I, the undersigned Notary Public in and for said County, in said State, hereby certify that Randy Moses, Vice President of FIRST STATE BANK OF DEKALB COUNTY, Fort Payne, Alabama, a corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me this day that being informed of the content of this instrument, he as such officer, and with full authority, executed the same voluntarily, for and as the acts of said corporation. Given under my hand and seal this  21st   day of    SEPTEMBER ,  2017

_____
Notary Public
MY COMMISSION
EXPIRES 9-22-19

01/31/2018  13:29 2568457854       FIRST STATE BANK       #8845 P.002/005
Loan History Inquiry                                                       Page 1 of 4




**LNHI**
Loans History Inquiry

Logged in as: DHU
Version: 7.11.306
Wednesday, January 31, 2018

Loan █████164    Co-Signer    ONE USED 1993 BRILLAN BB18611    00 S O U T H B R A N C H
SSN ████2942    ████5677    Status Inactive    Officer 201
ROBERT D BERRY                            Major Installment Loan
PO BOX 680604                             Minor Int Variable
FORT PAYNE AL 35968                       Minor Ins 1 None
                                       Minor Ins 2 None
                                       Minor Other None
                                   Year-To-Date Interest $0.00

| | Tran Date | Post Date | T/C | T/C Description | | Amount | Balance |
|---|---|---|---|---|---|---|---|
| $ | 09/18/2017 | 09/18/2017 | 301 | PAYOFF | | $1,068.17 - | $0.00 |
| $ | 08/25/2017 | 08/25/2017 | 300 | REGULAR PAYMENT | | $900.00 - | $970.55 |
| | 08/16/2017 | 08/16/2017 | 381 | AUTO LATE CHARGES | | $14.05 | $1,837.18 |
| | 07/17/2017 | 07/17/2017 | 381 | AUTO LATE CHARGES | | $14.05 | $1,837.18 |
| | 06/16/2017 | 06/16/2017 | 381 | AUTO LATE CHARGES | | $14.05 | $1,837.18 |
| $ | 05/15/2017 | 05/15/2017 | 300 | REGULAR PAYMENT | | $300.00 - | $1,837.18 |
| $ | 05/01/2017 | 05/01/2017 | 300 | REGULAR PAYMENT | | $281.07 - | $2,131.86 |
| $ | 05/01/2017 | 05/01/2017 | 340 | LATE CHARGE PAYMENT | | $18.93 - | $2,399.68 |
| | 04/17/2017 | 04/17/2017 | 381 | AUTO LATE CHARGES | | $14.05 | $2,399.68 |
| $ | 03/31/2017 | 03/31/2017 | 300 | REGULAR PAYMENT | | $600.00 - | $2,399.68 |
| | 03/16/2017 | 03/16/2017 | 381 | AUTO LATE CHARGES | | $14.05 | $2,972.68 |
| | 02/16/2017 | 02/16/2017 | 381 | AUTO LATE CHARGES | | $14.05 | $2,972.68 |
| $ | 02/08/2017 | 02/08/2017 | 300 | REGULAR PAYMENT | | $650.00 - | $2,972.68 |
| | 01/17/2017 | 01/17/2017 | 381 | AUTO LATE CHARGES | | $14.05 | $3,576.82 |
| | 12/16/2016 | 12/16/2016 | 381 | AUTO LATE CHARGES | | $14.05 | $3,576.82 |
| $ | 11/28/2016 | 11/28/2016 | 300 | REGULAR PAYMENT | | $509.44 - | $3,576.82 |
| $ | 11/28/2016 | 11/28/2016 | 340 | LATE CHARGE PAYMENT | | $26.32 - | $4,004.55 |
| | 11/16/2016 | 11/16/2016 | 381 | AUTO LATE CHARGES | | $13.41 | $4,004.55 |
| | 10/17/2016 | 10/17/2016 | 381 | AUTO LATE CHARGES | | $13.41 | $4,004.55 |
| $ | 08/03/2016 | 08/03/2016 | 300 | REGULAR PAYMENT | | $550.00 - | $4,004.55 |
| $ | 06/30/2016 | 06/30/2016 | 300 | REGULAR PAYMENT | | $286.59 - | $4,528.19 |
| $ | 06/30/2016 | 06/30/2016 | 340 | LATE CHARGE PAYMENT | | $13.41 - | $4,790.17 |
| | 06/16/2016 | 06/16/2016 | 381 | AUTO LATE CHARGES | | $13.41 | $4,790.17 |
| $ | 05/31/2016 | 05/31/2016 | 300 | REGULAR PAYMENT | | $314.82 - | $4,790.17 |
| $ | 05/31/2016 | 05/31/2016 | 300 | REGULAR PAYMENT | | $268.24 - | $5,104.99 |
| $ | 05/31/2016 | 05/31/2016 | 340 | LATE CHARGE PAYMENT | | $16.94 - | $5,314.98 |
| | 05/16/2016 | 05/16/2016 | 381 | AUTO LATE CHARGES | | $13.41 | $5,314.98 |
| | 04/18/2016 | 04/18/2016 | 381 | AUTO LATE CHARGES | | $13.41 | $5,314.98 |
| $ | 03/28/2016 | 03/28/2016 | 300 | REGULAR PAYMENT | | $536.48 - | $5,314.98 |
| $ | 03/28/2016 | 03/28/2016 | 340 | LATE CHARGE PAYMENT | | $63.52 - | $5,792.94 |
| | 03/16/2016 | 03/16/2016 | 381 | AUTO LATE CHARGES | | $13.41 | $5,792.94 |
| | 02/16/2016 | 02/16/2016 | 381 | AUTO LATE CHARGES | | $13.41 | $5,792.94 |
| $ | 01/29/2016 | 01/31/2016 | 300 | REGULAR PAYMENT | | $300.00 - | $5,792.94 |
| $ | 01/29/2016 | 01/31/2016 | 300 | REGULAR PAYMENT | | $300.00 - | $6,092.94 |
| | 01/19/2016 | 01/19/2016 | 381 | AUTO LATE CHARGES | | $13.41 | $6,327.93 |
| | 12/16/2015 | 12/16/2015 | 381 | AUTO LATE CHARGES | | $13.41 | $6,327.93 |
| | 11/30/2015 | 11/30/2015 | 300 | REGULAR PAYMENT | | $300.00 - | $6,327.93 |
| | 11/16/2015 | 11/16/2015 | 381 | AUTO LATE CHARGES | | $13.41 | $6,552.75 |
| | 09/24/2015 | 09/24/2015 | 300 | REGULAR PAYMENT | | $300.00 - | $6,552.75 |
| | 08/31/2015 | 08/31/2015 | 300 | REGULAR PAYMENT | | $300.00 - | $6,824.70 |
| | 08/05/2015 | 08/05/2015 | 300 | REGULAR PAYMENT | | $268.24 - | $7,093.12 |
| | 08/05/2015 | 08/05/2015 | 340 | LATE CHARGE PAYMENT | | $13.41 - | $7,350.03 |
| | 07/27/2015 | 07/27/2015 | 300 | REGULAR PAYMENT | | $268.24 - | $7,350.03 |
| | 07/27/2015 | 07/27/2015 | 340 | LATE CHARGE PAYMENT | | $35.29 - | $7,581.92 |
| | 07/16/2015 | 07/16/2015 | 381 | AUTO LATE CHARGES | | $13.41 | $7,581.92 |
| | 06/29/2015 | 06/29/2015 | 300 | REGULAR PAYMENT | | $268.24 - | $7,581.92 |
| | 06/29/2015 | 06/29/2015 | 340 | LATE CHARGE PAYMENT | | $31.76 - | $7,808.71 |
| | 06/16/2015 | 06/16/2015 | 381 | AUTO LATE CHARGES | | $13.41 | $7,808.71 |
| | 05/29/2015 | 05/31/2015 | 300 | REGULAR PAYMENT | | $310.47 - | $7,808.71 |
| | 05/16/2015 | 05/16/2015 | 381 | AUTO LATE CHARGES | | $13.41 | $8,040.70 |
| | 04/02/2015 | 04/02/2015 | 300 | REGULAR PAYMENT | | $336.15 - | $8,040.70 |
| | 03/16/2015 | 03/16/2015 | 381 | AUTO LATE CHARGES | | $13.41 | $8,288.85 |
| | 01/30/2015 | 01/31/2015 | 300 | REGULAR PAYMENT | | $536.48 - | $8,288.85 |
| | 01/16/2015 | 01/16/2015 | 381 | AUTO LATE CHARGES | | $13.41 | $8,757.85 |
| | 12/16/2014 | 12/16/2014 | 300 | REGULAR PAYMENT | | $268.24 - | $8,757.85 |
| | 12/16/2014 | 12/16/2014 | 340 | LATE CHARGE PAYMENT | | $13.41 - | $9,002.97 |
| | 12/01/2014 | 12/01/2014 | 300 | REGULAR PAYMENT | | $300.00 - | $9,002.97 |
| | 11/17/2014 | 11/17/2014 | 381 | AUTO LATE CHARGES | | $13.41 | $9,252.27 |
| | 10/30/2014 | 10/30/2014 | 300 | REGULAR PAYMENT | | $273.12 - | $9,252.27 |

http://nmain/system1/LNMFI.srf                                          1/31/2018

EFX ORIGINAL DOCUMENT 1 02/05/2018 00234565 001 0004

LLC

ANITA BERRY
PO BOX 680604
FORT PAYNE AL 35968-0604

9214 7169 1254 1600 0016 72





UNITED STATES POSTAGE
PITNEY BOWES
02 1P        $ 006.67⁰
00001782424   JAN 31 2018
MAILED FROM ZIP CODE 35203

EQUIFAX INFORMATION SERVICES,
PO BOX 740256
ATLANTA GA 30374

30374$0256 B001

SFX ORIGINAL DOCUMENT 1 02\05\2018 00234565 001 0005



EFX ORIGINAL DOCUMENT 1 02\05\2018 00234565 001 0005