# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| ANITA BERRY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:18-cv-00356-KOB |
| v. | ) | |
| | ) | |
| FIRST STATE BANK OF DEKALB | ) | |
| COUNTY INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
## RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Kirkland E. Reid
Jones, Walker LLP
11 N. Water Street, Suite 1200
Mobile, AL 36602
251-439-7513
Email: kreid@joneswalker.com

J. Anthony Love
Norman Charles Campbell, II
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
404-572-2748
Fax: 404-572-5100
Email: tlove@kslaw.com
Email: ccampbell@kslaw.com

*Attorneys for Defendant*
*Equifax Information Services LLC*

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**..................................................................................1

**EQUIFAX'S STATEMENT OF FACTS**..........................................3

    I.    Equifax's Response to Ms. Berry's Claimed Undisputed Facts ..............3

    II.   Equifax's Additional Undisputed Facts ................................................4

        A.    The First State Bank of Dekalb County Inc. Account ....................4

        B.    Ms. Berry's Mortgage Application ..................................................6

        C.    Ms. Berry's Dispute and Equifax's Reinvestigation.......................9

**DISCUSSION OF RELEVANT LEGAL AUTHORITIES**...............14

    I.    Standard of Review ............................................................................14

    II.   Ms. Berry Was Not Damaged by Equifax's Alleged Violations of the FCRA...............................................................................................14

        A.    Ms. Berry Has Failed To Provide Evidence of Damages Caused By Equifax.........................................................................16

        B.    Ms. Berry Has Not Adequately Supported Her Claim For Damages.......................................................................................21

    III.  Ms. Berry Failed to Establish That Equifax's February 2018 Reinvestigation Caused Her Alleged Damages. ....................................23

**CONCLUSION**................................................................................**24**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bermudez v. Equifax Info. Servs., LLC*,
No. 6:07–cv–1492–Orl–31GJK, 2008 WL 5235161 (M.D. Fla. Dec. 15, 2008) ..................................................................................................22

*Brown v. Equifax Info. Servs., LLC*,
No. 1:09-CV-0168-CAM-LTW, 2010 WL 11647403 (N.D. Ga. Feb. 16, 2010) ..................................................................................................22

*Cahlin v. Gen. Motors Acceptance Corp.*,
936 F.2d 1151 (11th Cir. 1991) ................................................................16

*Casella v Equifax Credit Info. Serv.*,
56 F.3d 469 (2d Cir. 1995) .......................................................................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..................................................................................14

*Clark v. Coats & Clark, Inc.*,
929 F.2d 604 (11th Cir. 1991) ..................................................................14

*Crabill v. Trans Union, LLC*,
259 F.3d 662 (7th Cir. 2001) ....................................................................16

*Jackson v. Equifax Information Services, LLC*,
167 F. App'x. 144 (11th Cir. 2006) ..........................................................15

*Joel Rivera v. Equifax Info. Servs., LLC*,
No. 1:18-CV-4639-AT-CCB, 2019 WL 2009286 (N.D. Ga. Mar. 14, 2019) ........................................................................................................15

*Johnson v. Equifax, Inc.*,
510 F. Supp. 2d 638 (S.D. Ala. 2007) ................................................15, 16

*Jordan v. Trans Union LLC*,
2006 WL 1663324 (N.D. Ga. 2006) ..........................................................22

*Lazarre v. JPMorgan Chase Bank, N.A.*,
780 F. Supp. 2d 1330 (S.D. Fla. 2011) .....................................................15

*Nagle v. Experian Info. Solutions, Inc.*,
297 F.3d 1305 (11th Cir. 2002) ................................................................15

*Pettway v. Equifax Info. Servs., LLC*,
  No. CIV.A. 08-0618-KD-M, 2010 WL 653708 (S.D. Ala. Feb. 17,
  2010) ............................................................................................... 14, 15

*Ray v. Equifax Information Servs., LLC*,
  327 F. App'x. 819 (11th Cir. 2009) ................................................... 16

*Reeves v. Equifax Info. Servs., LLC*,
  No. 2:09CV43KS-MTP, 2010 WL 2036661 (S.D. Miss. May 20,
  2010) ........................................................................................................ 22

*Riley v. Equifax Credit Information Services*,
  194 F. Supp. 2d 1239 (S.D. Ala. 2002) ............................................ 22

*Sampson v. Equifax Information Services, LLC*
  2005 WL 2095092 (S.D. Ga. 2005) .................................................. 22

**Statutes**

15 U.S.C. § 1681e(b) .............................................................................. 1

15 U.S.C. § 1681i(a) ..................................................................... *passim*

15 U.S.C. § 1681n ............................................................................. 1, 14

15 U.S.C. § 1681o ............................................................................. 1, 14

**Other Authorities**

Fed. R. Civ. P. 56 ................................................................................. 14

Fed. R. Evid. 201 ................................................................................... 9

Fed. R. Evid. 803(8) .............................................................................. 9

Defendant, Equifax Information Services LLC ("Equifax"), files its response in opposition to Plaintiff's Motion for Partial Summary Judgment ("Motion," Doc. 37). Ms. Berry's Motion should be denied, and Equifax's Motion for Summary Judgment (Doc. 40) should be granted.

## **INTRODUCTION**

In Ms. Berry's Motion, she seeks partial summary judgment in her favor solely on the issue of Equifax's liability under 15 U.S.C. § 1681o of the Fair Credit Reporting Act ("FCRA") for Equifax's alleged negligent violation of the requirement under 15 U.S.C. § 1681i(a) to conduct a reasonable investigation of Ms. Berry's January 31, 2018 dispute letter. (Doc. 37 at 1).

Ms. Berry's Motion does not seek a ruling on her three other claims in this action: (1) Equifax's liability under § 1681o for Equifax's alleged negligent violation of § 1681e(b)'s requirement to follow reasonable procedures to assure the accuracy of information reported about her; (2) Equifax's liability under § 1681n for Equifax's alleged willful violation of § 1681i(a); and (3) Equifax's liability under § 1681n for Equifax's alleged willful violation of § 1681e(b). (*See id.*). Ms. Berry does not seek a determination of damages. (*See id.*).

Ms. Berry seeks summary judgment on whether Equifax negligently violated § 1681i(a), but liability for a negligent violation of § 1681i(a) requires Ms. Berry to

show not just a violation, but also damages and causation. Ms. Berry's Motion fails to address the latter two elements.

Ms. Berry's Motion should be denied for two reasons. *First*, Ms. Berry cannot show that she suffered damages caused by a violation of § 1681i(a). Ms. Berry admitted that all of her alleged damages in this case, including her alleged emotional distress, arose from a January 2018 mortgage denial. Her mortgage application was denied because she had a 60-day late payment[1] on her First State Bank of DeKalb County, Inc. account during the 12 months prior to January 2018. Thus, the distinction between a 60-day late payment in September 2017 instead of August 2017 made absolutely no difference in January 2018 because August 2017, like September 2017, falls within the 12 months prior to January 2018. Because Ms. Berry cannot show that her mortgage application would have been granted if Equifax reported her 60-day late payment in August 2017, Ms. Berry's Motion should be denied.

*Second*, Ms. Berry's mortgage denial occurred in January 2018, but Equifax did not receive her dispute letter and commence its reinvestigation until February 2018, *after* her mortgage application was denied. Accordingly, Equifax's February 2018 reinvestigation could not have caused her alleged damages arising out of the

---

[1] Plaintiff repeatedly conflates or confuses the FSB Account's payment history with the Account's status. As explained in Equifax's own motion and as detailed further below, payment history and status are not the same.

January 2018 mortgage denial; Ms. Berry's Motion should be denied; and Equifax is entitled to summary judgment on Ms. Berry's § 1681i(a) claim.

## EQUIFAX'S STATEMENT OF FACTS

### I.      Equifax's Response to Ms. Berry's Claimed Undisputed Facts

Equifax responds to Ms. Berry's claimed undisputed facts in separately numbered paragraphs that coincide with Ms. Berry's claimed undisputed facts.

11.      Disputed. Equifax's policy is to reverify all accounts with the furnisher of the information unless there is an exception. (Deposition of Celestina Gobin ("Gobin Depo."), Doc. 37, Exhibit A (filed under seal), 83:8-84:12). For example, Equifax's policy and procedure is to not reverify the balance of an account if a consumer is disputing only the account balance and the account balance is zero. (Gobin Depo., 58:21-59:12). If a consumer is also disputing late payments before the account's closed date, as in this case, Equifax's policy and procedure is to reverify the information with the furnisher. (Gobin Depo., 77:12-78:24, 79:18-81:7).

20.      Disputed. Beverly Starnes did not submit Ms. Berry's application and denied her a mortgage loan because there was a 60-day late payment in the payment history section of the FSB Account on Ms. Berry's consumer report, and it did not matter whether it was a 60-day late payment for September 2017 or August 2017. (Deposition of Beverly Starnes ("Starnes Depo"), Doc. 37-3,-93:10-95:9, 102:16-103:21, 107:13-20).

21.     Disputed. Ms. Berry testified that all of her damages were caused by the mortgage loan denial, and her mortgage loan request was denied because there was a 60-day late payment in the payment history section of the FSB Account on Ms. Berry's consumer report, and it did not matter whether it was a 60-day late payment for September 2017 or August 2017. Deposition of Anita Berry ("Berry Depo."), Doc. 37-3, 40:7-13, 158:23-159:9, 161:9-165:22, 197:3-199:3; Starnes Depo., 93:10-95:9, 102:16-103:21, 107:13-20).

## II.    Equifax's Additional Undisputed Facts

Equifax submits that there are no genuine issues as to the following additional facts and that they support denial of Ms. Berry's Motion.

### A.    The First State Bank of Dekalb County Inc. Account

1.     Ms. Berry and her husband, Robert Berry, applied for and received a mortgage loan with First State Bank of DeKalb County Inc. ("FSB") bearing account number ending in 3164 ("Account"). (Complaint, Doc. 1, ¶ 9).

2.     In September 2007, FSB first reported the Account to Equifax. (Declaration of Celestina Gobin ("Gobin Decl."), Doc. 40-1, ¶41).

3.     Ms. Berry's monthly payments on the Account were due on the 5th of each month. (Berry Depo., Doc. 37-4, 43:14-16, 44:7-12, 44:16-18; Deposition of David Henderson ("Henderson Depo."), Doc. 37-3, 25:21-26:2).

4.      Ms. Berry failed to make timely payments on the Account for the payments due in June, July, and August 2017. (Doc. 1, ¶ 10; Berry Depo., 43:7-45:7; First State Bank of Dekalb County, Inc.'s Second Supplemental Responses to Plaintiff's Discovery, MCED237, Doc. 37-2 at 54).

5.      On August 25, 2017, Ms. Berry finally made the payments on the Account for the payments due in June, July, and August 2017. (Doc. 1, ¶ 10; Berry Depo., 43:7-45:7; First State Bank of Dekalb County, Inc.'s Second Supplemental Responses to Plaintiff's Discovery, MCED237, Doc. 37-2 at 54).

6.      When Ms. Berry did not make her June 2017 payment on or before July 5, 2017, her Account became 30 days late. (Berry Depo., 43:7-45:7, 96: 2-21, 98:15-19).

7.      When Ms. Berry did not make her June or July 2017 payments on or before August 5, 2017, her Account became 60 days late. (*Id.*, 43:7-45:7, 87:11-88:5, 96:2-21, 98:15-21).

8.      It would have been accurate to report the Account as 60 days late for August 2017 and 30 days late for July 2017. (*Id.*, 94:8-95:22, 96:2-9, 98:15-21, 158:8-22; First State Bank of Dekalb County, Inc.'s Second Supplemental Responses to Plaintiff's Discovery, MCED237, Doc. 37-2 at 54).

9.     On or before July 22, 2017, FSB reported the Account to Equifax as 30 days late for July 2017. (Expert Report of John Ulzheimer ("Ulzheimer Report"), Doc. 40-5, Exhibit A, at 16).

10.    Equifax did not cause a 60-day late payment, or any other late payment, to appear on the Account tradeline at Equifax. (*Id.*)

11.    FSB affirmatively reported all of the late payments associated with Ms. Berry's mortgage loan. (*Id.*)

12.    FSB reported the Account as 30 days late for the month of August 2017, and 60 days late for the month of September 2017. (*Id.*)

13.    FSB should have reported the Account as 30 days late for July 2017, and 60 days late for August 2017. (Berry Depo., 158:8-22; Henderson Depo., 50:13-52:6; First State Bank of Dekalb County, Inc.'s Second Supplemental Responses to Plaintiff's Discovery, MCED237, Doc. 37-2 at 54).

**B.     Ms. Berry's Mortgage Application**

14.    In January 2018, Ms. Berry sought assistance from Beverly Starnes, a Senior Mortgage Loan Originator at SouthPoint Bank, to obtain a mortgage loan from SouthPoint Bank to finance the purchase of a new home. (Doc. 1, ¶ 12; Starnes Depo., 66:2:15, 76:20-77:6, 78:11-79:3).

15.    On or about January 14, 2018, Ms. Starnes completed a credit application with Ms. Berry. (Starnes Depo., 72:20-75:13).

16.     On January 14, 2018, Ms. Starnes pulled a credit report for Ms. Berry through CIC Credit. (*Id.*, 68:19-69:23).

17.     On or about January 31, 2018, Ms. Starnes discovered that Equifax was reporting the FSB loan as 60 days late for the month of September 2017. (*Id.*, 92:15-22).

18.     Ms. Starnes told Ms. Berry that she could not qualify for a loan with SouthPoint Bank for at least six months from January 2018 because Ms. Berry had a 60-day late payment on the Account. (*Id.*, 93:10-95:9, 107:13-20).

19.     Ms. Starnes could not obtain a loan for Ms. Berry until 11 months had passed from the month of a 60-day late payment on the Account. (*Id.*, 102:16-103-21).

20.     Ms. Berry could not obtain a mortgage loan in January 2018 whether the 60-day late payment occurred in August 2017 or September 2017. (*Id.*, 93:10-95:9, 107:13-20).

21.     Ms. Starnes has no recollection of Ms. Berry telling her that she was 60 days late in paying the Account in August 2017, but if Ms. Berry had told her that she was 60 days late in paying the Account in August 2017, Ms. Starnes would have told her that she would have to wait 11 months from that late payment to obtain a loan. (*Id.*, 102:4-104-14, 116:23-117:14).

22.     On January 31, 2018, Ms. Starnes denied Ms. Berry's mortgage loan request because of the 60-day late payment on her consumer report, and Ms. Starnes would have denied the mortgage loan request whether Ms. Berry's consumer report reported the 60-day late payment in August 2017 or September 2017. (Starnes Depo., 117:19-122:17, 133:9-134:19, 135:2-12; Berry Depo., 101:11-103-2, 129:21-131:11).

23.     Ms. Starnes could not approve Ms. Berry for a loan if there was a 60-day late payment within the previous 12 months. (Starnes Depo., 144:14-19, 147:4-17, 168:14-169:19).

24.     All of Ms. Berry's alleged emotional distress and other damages arose out of the denial of the mortgage loan she was seeking in January 2018. (Berry Depo., 40:7-13, 158:23-159:9, 161:9-165:22, 197:3-199:3).

25.     All of Ms. Berry's alleged damages arose out of her inability to obtain a mortgage loan from Ms. Starnes in January 2018. (*Id.*, 159:6-9, 161:9-165:22, 197:3-199:3).

26.     Ms. Berry did not go to a doctor, did not buy any medicine, and did not have any counseling as a result of Equifax's actions. (*Id.*, 151:18-152:3).

27.     On May 18, 2018, Ms. Berry purchased a home at 117 Argyle Drive, Gadsden, Alabama, next door to her daughter, where she wanted to be, and where her husband wanted her to be. (*Id.*, 7:6-15, 124:12-14, 153:18-154:2, 155:11-156:2;

http://www.deltacomputersystems.com/cgi-

apa3/APMCGI02?HTMCNTY=AL31&HTMBASE=C&HTMKEY=017622[2]).

    **C.**    **Ms. Berry's Dispute and Equifax's Reinvestigation**

    28.    Equifax's records show that it received the below dispute from Ms. Berry and that it reviewed and responded to it as described below. (Gobin Decl., Doc. 40-1, ¶ 43).

    29.    On February 5, 2018, Equifax received a letter dated January 31, 2018, from Ms. Berry disputing information concerning two accounts: (1) the Account, and (2) a "Synd Office" account (original creditor Brookwood Medical Center). (*Id.*, ¶ 44; a true and correct copy of Ms. Berry's January 31, 2018 letter, all enclosed documents, and the envelope are collectively attached to the Gobin Decl. as Exhibit A; Ulzheimer Report, Doc. 40-5, Exhibit A, at 12).

    30.    Enclosed with Ms. Berry's January 31, 2018 letter were two documents: (1) a Full Satisfaction of Recorded Lien, and (2) a Loan History Inquiry. (Gobin Decl., ¶ 45; a true and correct copy of the two single-page documents are attached to the Gobin Decl. as part of Exhibit A).

---

    [2] Equifax asks the Court to take judicial notice of the Property Appraisal public record of Etowah County pursuant to Federal Rules of Evidence 201 and 803(8) accessible through http://etowahcounty.org/deeds-and-records/, clicking on Online Services, scrolling to and clicking Etowah County GIS, entering the address, clicking on the location, and clicking on More Details.

31.     Equifax's records show that at the time it received Ms. Berry's dispute, the Account reported with a <u>status</u> of M1 (green box), which means "Pays As Agreed," and also reported as "Closed Or Paid Account/Zero Balance" (yellow box).[3]

```
FIRST STATE BANK- S. 122017 092007  23500                        M1 99 J 09/2017
                  09/2017          975 281          10Y M 26 B
         DFD/DLA      PURCH/SOLD/ORIGINAL CREDITOR        AUI
         09/2017 O  *
         BAL AMT     BAL PAY DT  DEF PAY DT CC
                                  ACCT# REDACTED 3164
         CLOSED OR PAID ACCOUNT/ZERO BALANCE
         REAL ESTATE MORTGAGE

DEROG TRADE HISTORY
09/2017-2 08/2017-1 03/2017-1 02/2017-3 01/2017-2 12/2016-1 11/2016-1 04/2016-1
02/2016-1 12/2015-1 05/2014-1 03/2014-1 02/2014-1 11/2013-1
```

(*Id.*, ¶ 46).

32.     The status is the condition of the account when last updated by the creditor or otherwise. (*Id.*, ¶ 47).

33.     The status of an account is different from the "Account History," also known as "Derog Trade History." (*Id.*, ¶ 48).

34.     Unlike status, which is a reflection of an account's current condition, "Account History" or "Derog Trade History" is the <u>payment history</u> and historical account information for an account. (*Id.*, ¶ 49).

---

[3] The asterisk (*) symbol in the purple box indicates that it was last updated by First State Bank via their normal, organic, monthly update process and not via an offcycle or "manual" update such as via an ACDV or AUD. (Ulzheimer Report, Doc. 40-5 at 16 n.26).

35.     The relevant status codes for the account history or trade history of the Account are as follows:

1 = 30-59 Days Past Due
2 = 60-89 Days Past Due
3 = 90-119 Days Past Due

(*Id.*, ¶ 50).

36.     Equifax's records show that at the time it received Ms. Berry's dispute, FSB reported the following Derog Trade History (blue box): 60 days late for September 2017 on the date that FSB reported the Account to Equifax, 30 days late for August 2017, 30 days late for March 2017, 90 days late for February 2017, 60 days late for January 2017, 30 days late for December 2016 and so on all the way back to 30 days late for November 2013. (*Id.*, ¶ 52).

37.     FSB acknowledges that it reported to Equifax a "current" status in September 2017 and a "60-day late" status in August 2017:

the status code is "11," which means that the account was being reported "current" as of September 12, 2017. (It should be noted that the account status in the same section of the August 2017 report contained a "78," which indicates that as of August 8, 2017 [the second Tuesday of that month], Ms. Berry was over 60 days past due.)

(First State Bank of Dekalb County, Inc.'s Second Supplemental Responses to Plaintiff's Discovery at 3, Doc. 37-2 at 50; MCED236, Doc. 37-2 at 53; Henderson Depo., Doc. 37-2, 45:20-48:6, 50:12-23).

38.     According to Equifax's records, the individual that handled the dispute, Mr. Umesh Tripathi, noted that Ms. Berry disputed the current balance and/or the amount past due on the Account, but did not note any dispute concerning the late payment reporting for the month of September 2017 on the Account. (*Id.*, ¶ 53; *see also* Ulzheimer Report at 12).

39.     Mr. Tripathi noted that the Account was reporting as closed and paid in full with a zero balance. (Gobin Decl., ¶ 54; Ulzheimer Report at 12).

40.     Mr. Tripathi noted that the Synd Office account was not reporting on Ms. Berry's Equifax credit file at that time. (Gobin Decl., ¶ 55).

41.     On February 8, 2018, Equifax provided Ms. Berry with its reinvestigation results in which it notified her that FSB was currently reporting a zero balance for the Account, and the Synd Office /Brookwood Medical Center account was currently not reporting on her Equifax credit file. (*Id.*, ¶ 56).

42.     Equifax's training materials for processing mailed disputes contain clear and unambiguous language directing dispute analysts to "Address ALL of the consumer's disputes and concerns, which can include: . . . 'prior late payment(s) are incorrect'. . ."; the training materials also provide multiple exercises and common scenarios used to train dispute analysts when to use the "not late" dispute code and generate an investigation. (Ulzheimer Report at 13).

43.     There are two dispute codes an Equifax dispute analyst can use to communicate that a consumer is disputing late payments on his or her credit report with the data furnisher:

> Code 007 – "Disputes present, previous account status, payment history profile, payment rating. Verify payment history profile, account status and payment rating."

> Code 053 – "Consumer states inaccurate information. Did not provide specific dispute. Provide or confirm complete ID and account information."

(*Id.*)

44.     While Code 007 is the preferred code, either of the above dispute codes could be used by an Equifax dispute analyst to trigger an investigation of late payments by a data furnisher, like FSB. (*Id.*)

45.     In fact, in the Equifax dispute training or "Indicating" manual there are countless examples explaining when and how a dispute analyst should code the reinvestigation of a late payment. (*Id.*)

46.     Any reasonable person would not interpret the Equifax training manual as suggesting or instructing Equifax dispute analysts to ignore consumer disputes, of any variety, including late payment disputes. (*Id.*)

-13-

## DISCUSSION OF RELEVANT LEGAL AUTHORITIES

**I.    Standard of Review**

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Once the moving party shows that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof, the burden then shifts to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

**II.    Ms. Berry Was Not Damaged by Equifax's Alleged Violations of the FCRA.**

In her Motion, Ms. Berry seeks partial summary judgment in her favor solely on the issue of Equifax's liability under § 1681o of the FCRA for Equifax's alleged negligent violation of § 1681i(a)'s requirement to conduct a reasonable investigation of Ms. Berry's January 31, 2018 dispute letter. (Doc. 27 at 1). The FCRA does not impose strict liability; rather, it imposes liability only for negligent or willful

noncompliance. *See Pettway v. Equifax Info. Servs., LLC*, No. CIV.A. 08-0618-KD-M, 2010 WL 653708, at *9 (S.D. Ala. Feb. 17, 2010); 15 U.S.C. §§ 1681n, 1681o. Negligence has four traditional elements: (1) duty or standard of care, (2) breach of that duty or standard, (3) proximate causation, and (4) damages or injury. *See e.g.*, *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 646–47 (S.D. Ala. 2007). These traditional elements have been incorporated into the prima facie elements of FCRA claims. *See id.*

　　To prevail on a claim of negligent noncompliance with § 1681i(a), a plaintiff must prove that: (1) the consumer's credit report contains inaccurate or incomplete information; (2) the consumer notified the CRA of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) the CRA failed to respond or conduct a reasonable reinvestigation of the disputed items; and (5) the failure to reinvestigate caused the consumer to suffer actual damages. *Pettway v. Equifax Info. Servs., LLC*, No. CIV.A. 08-0618-KD-M, 2010 WL 653708, at *8–9 (S.D. Ala. Feb. 17, 2010); *Joel Rivera v. Equifax Info. Servs., LLC*, No. 1:18-CV-4639-AT-CCB, 2019 WL 2009286, at *4 (N.D. Ga. Mar. 14, 2019), *report and recommendation adopted*, No. 1:18-CV-4639-AT-CCB, 2019 WL 1996699 (N.D. Ga. Apr. 3, 2019); *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011). Accordingly, Ms. Berry must not only show that Equifax violated the FCRA, she must also prove that the alleged violation caused her alleged damages. *See Jackson*

*v. Equifax Information Services, LLC,* 167 F. App'x. 144, 146 (11th Cir. 2006); *Casella v Equifax Credit Info. Serv.*, 56 F.3d 469, 473 (2d Cir. 1995); *Nagle v. Experian Info. Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) (noting that "failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment.").

### A.    Ms. Berry Has Failed To Provide Evidence of Damages Caused By Equifax.

Ms. Berry is not entitled to summary judgment on her § 1681i(a) claim because she offers no evidence that Equifax's alleged violation was the proximate cause of her harm. *Ray v. Equifax Information Servs., LLC*, 327 F. App'x. 819, 826 (11th Cir. 2009) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *see also Johnson*, 510 F. Supp. 2d at 647 ("The burden of proof is on the plaintiff to show that his or her damages were caused by the defendant's violations of the FCRA."); *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) (affirming summary judgment for agency where consumer failed to provide a causal connection between alleged violations of the FCRA and his purported injury).

In her Motion, Ms. Berry offers two statements of damages allegedly caused by Equifax:

> 20.    The 60 day late notation on Plaintiff's FSB account being reported by Equifax is the reason why Beverly Starnes, Plaintiff's mortgage broker, did not submit her application and denied her a

mortgage loan. Deposition of Beverly Starnes attached to this Motion as "Exhibit C," p. 164: 6-9.

> 21.    With regard to damages, Plaintiff testified that she could not sleep well, was nervous, lost her appetite, and was nauseous as a result of the incidents in this case. Deposition of Anita Berry attached to this Motion as "Exhibit D," pp. 197: 22-23, 198: 1-5. Additionally, Equifax's inaccurate reporting cost her a home loan. Exhibit D, p. 162: 14-20. Plaintiff testified she also suffered humiliation and embarrassment. Exhibit D, pp. 163: 15-23, 164: 16-22.

(Doc. 37 at 8). In short, Ms. Berry alleges that Equifax's failure to reasonably reinvestigate her January 31, 2018 dispute caused: (1) her request for a mortgage loan to be denied, and (2) her to not sleep well, nervousness, loss of appetite, nausea, humiliation, and embarrassment. (*Id.*).

Ms. Berry testified that all of her emotional distress and other damages arose out of the denial of the mortgage loan she was seeking in January 2018. (Berry Depo., Doc. 37-4, 40:7-13, 158:23-159:9, 161:9-165:22). Specifically, Ms. Berry testified:

> Q.    But before we go down that road, I just want to ask you what you are seeking in this case?
>
> A.    Well, I'm seeking damages that I believe were caused because I was denied financing for the home that we tried to get in January.

(*Id.*, 40:7-13).

> Q.    Okay. And you were just asked a little bit about the emotional distress. Is that all a result of not getting the home that you were applying for in January of 2018?
>
> A.    Yes.
>
> Q.    Okay. In other words, if you had been able to obtain that home loan, then we wouldn't be here today; is that right?

-17-

A.    Yes.

(*Id.*, 158:23-159:9).

Q.    How do you quantify your mental anguish? Because are you seeking money for your mental anguish; is that right?

A.    Okay. Just give me a second. Just give me a second.

Q.    I understand.

A.    The only thing that my husband wanted done was for me and my grandkids to be in a home close to my youngest daughter so that if he didn't make it, he would – I would have the support I would need to continue on because he provided a tremendous amount of support and care for the grandchildren since I worked full time.

Seeing him be distraught when we lost the house and him worry about us until he died was very, very hard for me and the family.

I'm sorry. I'm so sorry.

So, in essence, I had to convince him without knowing that we were going to be fine.

(*Id.*, 153:12-154:10).

Q.    Okay. And then the last category is -- it says, "Mental and emotional pain and anguish, humiliation, and embarrassment." And I -- I want to break those down if we need to, but if you consider that all to be the same thing, then I don't want to go through each one.

So when it comes to the emotional -- mental and emotional pain and anguish, humiliation, and embarrassment, is that all sort of one thing to you or do you consider each of those different?

A.    Well, the -- the way I see it is the mental and emotional pain and anguish was dealing with my husband, as I said before.

Humiliation and embarrassment was -- to me, that was -- that was due to the fact we had to back out of the loan with the sellers. That was not pleasant.

Q.      Okay. Is there any other -- so the mental and emotional pain and anguish, that's -- that's -- your testimony for Equifax would be the same as you just gave in response to counsel for FSB; is that right?

A.      Yes, sir.

Q.      Okay. Is there any other mental and emotional pain and anguish you haven't already mentioned in your testimony here today that you seek to recover from Equifax in this case?

A.      Not that I can think of.

Q.      All right. And then the humiliation and embarrassment, you just mentioned having to withdraw the sale with the -- I guess the sellers of the home; is there anything else besides that that would be covered under "humiliation and embarrassment"?

A.      Not that I can think of right now.

(*Id.*, 163:1-164:22). Ms. Berry testified that her physical symptoms arose from her

emotional distress:

THE WITNESS:   Well, you know, during that time, I was obviously nervous. I – I didn't sleep well. I did -- well, basically, I would either not sleep well or I would want to sleep all the time, which is, you know, sometimes denial. But anyway.

But, basically, having to deal with the loss of the house and what was going on with Robert, I was just -- -- I basically just functioned by automation, basically. I did what I had to do. I got up every morning. I went to work. I took care of Robert. I took care of the kids. That took a lot of toll on me physically.

I have health issues that's – you know, I have -- I have heart issues, I have back issues. So all of that had to be monitored so that I could stay calm. But it was all routine.

So in answer to your question, other than maybe the sleep, maybe the nervousness, the not eating, the being sick when I did eat, which all goes with the nervous stomach, I would say -- and other than other things I talked about, that's all I can think of right now.

Q.      (By Mr. Seals) I understand that when this was all going on, Robert was very ill.[4]

A.      (Witness nods head.)

Q.      And I know that -- I'm assuming some part of your symptoms related to that, were they not?

A.      Yes.

MR. McLAUGHLIN:      Same objection.

Q.      (By Mr. Seals) Do you attribute any of the symptoms you were having to what we're here about today?

MR. McLAUGHLIN:      Same objection.

THE WITNESS:  Yes, because it was hard enough dealing with Robert's illness just on the surface of what it was, but it was worse knowing that he was worrying about me and the kids.

So, yes, I do contribute some of it to this, which I think I made clear in earlier testimony.

(*Id.*, 197:3-199:3). Accordingly, all of Ms. Berry's alleged emotional distress and physical symptoms arose from the denial of her request for loan mortgage in January 2018.

Ms. Starnes testified that she denied the mortgage loan request because Ms. Berry had a 60-day late payment on the Account, and she further testified it did not matter whether the 60-day late payment occurred in August 2017 or September 2017. (Starnes Depo., Doc. 37-3, 93:10-95:9, 107:13-20). Ms. Starnes could not

---

[4] Ms. Berry's husband, Robert, had been diagnosed with lung cancer in June 2017 and was going through chemo and radiation. (Berry Depo., Doc. 37-4, 90:15-16, 122:9-15). At that time, he was in hospice. (Berry Depo., Doc. 37-4, 155:17-18).

obtain a loan for Ms. Berry until 11 months had passed from the month of a 60-day late payment on the Account. (*Id.*, 102:16-103-21, 103:13-21, 104:1-14, 122:6-17). For example, if Ms. Berry had been 60 days late in June 2017, Ms. Starnes would have told her that she could not get a loan in January 2018 and that Ms. Berry would have to start an 11-month waiting period from June 2017. (*Id.*).

Ms. Starnes made it clear in her deposition, multiple times, that Ms. Berry would have to either wait one year from the date of her most recent 60+ day late payment or wait until she did not have more than one 30-day late payment within the most recent 12 months of her application, and that Ms. Berry was not going to close on a loan in January 2018. (*See, e.g.*, *id.*, 95:2-8, 104:5-12, 107:13-20, 122:6-123:10, 144:14-147:13, 151:23-153:13, 166:10-167:22). It did not matter if the FSB late payment was (1) reported correctly in the first place by FSB, (2) corrected by FSB as part of their normal monthly credit report updates, or (3) corrected by Equifax pursuant to Ms. Berry's January 31, 2018 dispute letter to Equifax. And it is undisputed that Ms. Berry was 60 days late in paying the Account in August 2017. (Berry Depo., Doc. 37-4, 158:8-22).

### B. Ms. Berry Has Not Adequately Supported Her Claim For Damages.

Ms. Berry's emotional damages are speculative at best and not corroborated by any credible evidence. Summary judgment is appropriate in a case brought under the FCRA when the plaintiff cannot present evidence establishing that the defendant

proximately caused her damages. *Reeves v. Equifax Info. Servs., LLC*, No. 2:09CV43KS-MTP, 2010 WL 2036661, at *6 (S.D. Miss. May 20, 2010) (collecting cases). "A plaintiff must first show proof of actual injury, such as evidence of the injured party's conduct and observations of others, for damages to be awarded for mental or emotional distress under the FCRA." *Jordan v. Trans Union LLC*, 2006 WL 1663324, 7-8 (N.D. Ga. 2006); *Riley v. Equifax Credit Information Services*, 194 F. Supp. 2d 1239, 1244-45 (S.D. Ala. 2002) (requiring that a claim for mental distress damages be supported by more than plaintiff's own conclusory allegations). Although Ms. Berry does not need to prove that she confided her distress to a medical professional, she must produce some form of independent, corroborating evidence of her humiliation and embarrassment to recover compensatory damages for emotional distress. *Sampson v. Equifax Information Services, LLC* 2005 WL 2095092, *5 (S.D. Ga. 2005). Evidence of non-economic damages "consisting only of [plaintiff's] own vague testimony that [she] suffered anxiety and lost weight as a result of 'trying to correct [her] credit'" is wholly "lacking." *Bermudez v. Equifax Info. Servs., LLC*, No. 6:07–cv–1492–Orl–31GJK, 2008 WL 5235161, at *3 (M.D. Fla. Dec. 15, 2008).

"Because [Ms. Berry] fails to provide sufficient evidence of actual damages resulting from [Equifax's] actions, her § 1681i(a) claims cannot stand on her allegations of [Equifax's] negligent noncompliance. *See Brown v. Equifax Info.*

*Servs., LLC*, No. 1:09-CV-0168-CAM-LTW, 2010 WL 11647403, at *16 (N.D. Ga. Feb. 16, 2010) (denying claim where, like here, plaintiff "concedes that she has not lost any wages, has not sustained harm to her reputation, has not been denied any loans or credit, has not had any of her existing credit limits reduced, has not received medical treatment, and has not been prescribed any medications" caused by Equifax).

Here too, Ms. Berry's self-serving testimony is insufficient. Her statements are vague, conclusory, and lack credibility. There is no degree of specificity, credibility, or corroboration. Ms. Berry has failed to offer evidence to properly substantiate her alleged damages.[5] In addition, Ms. Berry has failed to offer evidence of causation. Accordingly, the Court should deny Ms. Berry's Motion and, instead, grant summary judgment in Equifax's favor and dismiss Ms. Berry's claims against it.

## III.   Ms. Berry Failed to Establish That Equifax's February 2018 Reinvestigation Caused Her Alleged Damages.

Equifax's alleged violation of § 1681i(a) could not have caused any of Ms. Berry's damages because all of those damages arose out of Ms. Starnes' January 31, 2018 loan denial (Berry Depo., Doc. 37-4, 158:23-159:5, 159:6-9, 161:9-165:22), and Equifax did not receive Ms. Berry's dispute letter until February 5, 2018 (Ms. Berry's Motion, Doc. 37 at 5, ¶ 2; Gobin Decl., Doc. 40-1, ¶ 44). Both the

---

[5] Ms. Berry offered the Affidavit of Jessica Nelson in support of her Response And Brief in Opposition to the Motion for Summary Judgment Filed by Equifax Information Services, LLC. (Doc. 44-2). Ms. Berry chose not to submit it in support of her Motion. (*See* Doc. 37).

cancellation of Ms. Berry's first application for a mortgage loan in October 2017 and the denial of her second application on January 31, 2018, predate the receipt and processing of her dispute letter. Any alleged failures by Equifax during the reinvestigation of Ms. Berry's dispute in February 2018 could not have caused damages that arose from the denial of her application for a loan mortgage in January 2018. Accordingly, Ms. Berry's damages occurred prior to Equifax's alleged violation of § 1681i(a), and, therefore, could not have been caused by Equifax's alleged violation of § 1681i(a).

Ms. Berry has no evidence to support her claim that Equifax's reinvestigation was a factor in any unfavorable credit decision or other actual damages suffered by her. Thus, Ms. Berry's Motion should be denied.

## **CONCLUSION**

For the reasons stated above, Ms. Berry's Motion should be denied, and, instead, Equifax's Motion for Summary Judgment should be granted.

Respectfully submitted this 9th day of July, 2019.

/s/ Kirkland E. Reid
Kirkland E. Reid
Jones, Walker LLP
11 N. Water Street, Suite 1200
Mobile, AL 36602
251-439-7513
Email: kreid@joneswalker.com

*/s/ Norman Charles Campbell, II*
J. Anthony Love
Norman Charles Campbell , II
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
404-572-2748
Fax: 404-572-5100
Email: tlove@kslaw.com
Email: ccampbell@kslaw.com

*Counsel for Defendant*
*Equifax Information Services LLC*