FILED
2019 Jul-23  PM 06:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| ANITA BERRY, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:18-cv-00356-KOB |
| v. ) | |
| ) | |
| FIRST STATE BANK OF DEKALB ) | |
| COUNTY INC., et al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
## REPLY IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Kirkland E. Reid
Jones, Walker LLP
11 N. Water Street, Suite 1200
Mobile, AL 36602
251-439-7513
Email: kreid@joneswalker.com

J. Anthony Love
Norman Charles Campbell, II
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
404-572-2748
Fax: 404-572-5100
Email: tlove@kslaw.com
Email: ccampbell@kslaw.com

***Attorneys for Defendant***
***Equifax Information Services LLC***

## **TABLE OF CONTENTS**

**RESPONSE TO MS. BERRY'S ADDITIONAL UNDISPUTED FACTS.........1**

**DISCUSSION OF RELEVANT LEGAL AUTHORITIES ...................................2**

    I.    Ms. Berry Was Not Damaged by Equifax's Alleged Violations of the FCRA. ...................................................................................................................2

    II.   Ms. Berry Has Not Established That Equifax Failed to Follow Reasonable Procedures. ..............................................................................................6

    III.  Ms. Berry Failed to Establish That Equifax Willfully Violated the FCRA. ...................................................................................................................9

**CONCLUSION** .................................................................................................10

Defendant, Equifax Information Services LLC ("Equifax"), files its reply in further support of its Motion for Summary Judgment ("Motion," Doc. 40) and in reply to Plaintiff's Response And Brief in Opposition to the Motion for Summary Judgment Filed by Equifax Information Services, LLC ("Response," Doc. 44). For the reasons set forth below and in its Motion, Equifax's Motion should be granted, and Ms. Berry's motion should be denied.

## **RESPONSE TO MS. BERRY'S ADDITIONAL UNDISPUTED FACTS**

Equifax responds to Ms. Berry's additional claimed undisputed facts in separately numbered paragraphs that coincide with Ms. Berry's additional claimed undisputed facts.

3. Disputed. Beverly Starnes did not submit Ms. Berry's application and denied her a mortgage loan because there was a 60-day late notation on Ms. Berry's consumer report, and it did not matter whether it was a 60-day late notation for September 2017 or August 2017. (Deposition of Beverly Starnes ("Starnes Depo"), Doc. 41, 93:10-95:9, 102:16-103:21, 107:13-20).

11. Disputed. At Ms. Berry's deposition, Equifax asked her specifically about the damages she alleged were caused by Equifax. (Berry Depo., Doc. 40-2, 161:2-164:22). Ms. Berry testified that all of her damages, including her emotional distress, were the result of not getting the home that she was applying for in January 2018. (*Id.*, 158:23-159:5; 161:22-164:3). She testified that her emotional distress arising from that denial manifested as the physical symptoms she described in her interrogatory

response[1] and deposition. (*Id.*, 196:9-199:3). In addition, Ms. Berry testified that the testimony she gave in response to First State Bank's counsel concerning her mental and emotional pain and anguish would be the same for Equifax. (*Id.*, 164:4-15).

12. Disputed. *See* response to Ms. Berry's Additional Undisputed Fact 11.

## DISCUSSION OF RELEVANT LEGAL AUTHORITIES

**I.   Ms. Berry Was Not Damaged by Equifax's Alleged Violations of the FCRA.**

In her Response, Ms. Berry implores the Court to focus on only three facts, each of which involves only Equifax's possible violation of the FCRA, and to ignore facts that demonstrate that Equifax's alleged violation of the FCRA did not cause Ms. Berry's alleged emotional distress and the physical manifestations thereof. (Doc. 44 at 3-4). A review of all of the facts, however, demonstrates that Equifax, not Ms. Berry, is entitled to summary judgment.

As Ms. Berry testified under oath when asked by Equifax's counsel, "we wouldn't be here today" if she "had been able to obtain that home loan" from SouthPoint Bank through Ms. Starnes in January 2018. (Deposition of Ms. Berry ("Berry Depo."), Doc. 40-2, 159:6-9). Ms. Berry further testified that she could not obtain that home loan if she had a 60-day late payment within the prior 12 months, and she knew she had a 60-day late payment in August 2017, a mere five months prior. (*Id.*, 168:14-169-19; 184:12-21).

---

[1] Ms. Berry described that harm in her interrogatory responses as follows:
> I am claiming physical harm as well as emotional harm as a result of Equifax's actions. Specifically, I am claiming that I lost sleep/insomnia, anxiety, stress, loss of appetite. I also recall stress or tension headaches likely from my lack of sleep.

(*See* Doc. 44 at 9, 11; Doc. 44-1 at ¶ 7).

Ms. Starnes made it clear in her deposition, multiple times, that Ms. Berry would have to either wait one year from the date of her most recent 60-day late payment or wait until she did not have more than one 30-day late payment within the most recent 12 months of her application, and that Ms. Berry was not going to close on a loan in January 2018. (*See, e.g.*, Deposition of Beverly Starnes ("Starnes Depo"), Doc. 41, 95:2-8, 104:5-12, 107:13-20, 122:6-123:10, 144:14-147:13, 151:23-153:13, 166:10-167:22). It did not matter if the First State Bank ("FSB") late payment was (1) reported correctly in the first place by FSB, (2) corrected by FSB as part of their normal monthly credit report updates, or (3) corrected by Equifax pursuant to Ms. Berry's January 31, 2018 dispute letter to Equifax. And it is undisputed that Ms. Berry was 60 days late in paying the Account in August 2017. (Berry Depo., Doc. 40-2, 158:8-22). Accordingly, Ms. Berry would have to wait until August 2018 to obtain a home loan from SouthPoint Bank through Ms. Starnes.

Ms. Berry testified, "I'm seeking damages that I believe were caused because I was denied financing for the home that we tried to get in January." (*Id.*, 40:7-13). Ms. Berry later testified that the testimony she gave in response to First State Bank's counsel concerning her mental and emotional pain and anguish would be the same for Equifax. (*Id.*, 164:4-15). When Equifax asked her specifically about the damages she alleged were caused by Equifax, Ms. Berry testified that all of her damages, including her emotional distress, were the result of not getting the home that she was applying for in

January 2018. (*Id.*, 158:23-159:5, 161:22-164:3). She testified that her emotional distress arising from that denial manifested as the physical symptoms she described in her interrogatory response and deposition. (*Id.*, 196:9-199:3; *see* fn 1, *supra*).

In her Response, Ms. Berry attempts to contradict her clear answers to unambiguous questions and thereby create an issue of material fact as to the cause of her alleged damages. (Doc. 44 at 11-12; Doc. 44-1). Specifically, Ms. Berry offers her declaration to suggest that she was not asked during her deposition "specifically about damages [she] attributed specifically to Equifax's conduct in this case." (Doc. 44 at 11-12; Doc. 44-1, ¶ 5). She states that Equifax's failure to reinvestigate her dispute caused her the harm described in her interrogatory responses, (*id.*, ¶ 8); and her damages did not all arise out of the denial of the mortgage loan she was seeking in January 2018; rather, Equifax's conduct caused the damages described in her interrogatory response, (*id.*, ¶ 9). For the reasons stated in Equifax's Motion to Strike, filed contemporaneously herewith, the Court should strike Ms. Berry's Declaration or, in the alternative, strike the portions of it that contradict her deposition testimony.

Ms. Berry also offers the Affidavit of Jessica Nelson ("Nelson Aff.") in an attempt to create a material issue of fact. (Doc. 44 at 12; Doc. 44-2). Ms. Nelson stated that Ms. Berry suffered emotional distress when she received Equifax's response to her dispute letter "because Equifax would not investigate or remove the false information that was keeping her from buying a house before my father passed

away as was his wish" (Nelson Aff., ¶¶ 10-13). Rather than create a material issue of fact about the cause of Ms. Berry's emotional distress, Ms. Nelson's affidavit appears to reiterate Ms. Berry's testimony that her damages were caused by her inability to obtain the home loan before her husband passed away. (*Id.*).

Ms. Nelson's affidavit contains no evidence that Ms. Berry would have reacted any differently to Equifax's letter if Mr. Umesh Tripathi would have interpreted Ms. Berry's dispute letter differently and changed her September 2017 60-day late payment to an August 2017 60-day late payment. She cannot. If Mr. Tripathi had followed Equifax's policies and procedures and changed Ms. Berry's September 2017 60-day late payment to an August 2017 60-day late payment, Ms. Berry would have still been unable to obtain the home loan in January 2018 because, as Ms. Starnes repeatedly testified, Ms. Berry had to wait 12 months after a 60-day late payment to qualify for the home loan, or until August 2018 if her credit file had been corrected. (Starnes Depo., Doc. 41, 93:10-95:9, 102:16-103:21, 107:13-20). On May 18, 2018, Ms. Berry purchased a home at 117 Argyle Drive, Gadsden, Alabama, next door to her daughter, where she wanted to be, and where her husband wanted her to be. (*Id.*, 7:6-15, 124:12-14, 153:18-154:2, 155:11-156:2; http://www.deltacomputersystems.com/cgi-apa3/APMCGI02?HTMCNTY=AL31&HTMBASE=C&HTMKEY=017622[2]).

---

[2] Equifax asks the Court to take judicial notice of the Property Appraisal public record of Etowah County pursuant to Federal Rules of Evidence 201 and 803(8) accessible through http://etowahcounty.org/deeds-and-records/.

Ms. Berry might wish to argue that the jury should determine the issue of whether she suffered emotional distress as the result of the incorrect response letter rather than a correct response letter that would have confirmed that she could not obtain the home loan. That issue, however, does not raise a genuine dispute as to any material fact because Ms. Berry has repeatedly testified (Berry Depo., 158:23-159:5, 161:22-164:3), and her daughter's affidavit confirms, that all of Ms. Berry's damages were caused by her inability to obtain the home loan in January 2018, and Mr. Tripathi's error had no impact on that result (Starnes Depo., Doc. 41, 93:10-95:9, 102:16-103:21, 107:13-20). Accordingly, the Court should grant summary judgment in Equifax's favor.

## II.   Ms. Berry Has Not Established That Equifax Failed to Follow Reasonable Procedures.

Equifax is not liable solely because information may have been inaccurate. "The [FCRA] does not make [CRAs] strictly liable for all inaccuracies in the reports they prepare." *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1333 (S.D. Fla. 2011). Moreover, absent reason to doubt the reliability of FSB, Equifax acted reasonably by relying on the information furnished by FSB. *See Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d 1228, 1234 (M.D. Ala. 2002) (citing *Henson v. CSC Credit Servs., Inc.*, 29 F.3d 280, 285 (7th Cir. 1994) (holding reliance on information is reasonable "absent prior notice that the information may be inaccurate").

In her Response, Ms. Berry relies upon a misplaced interpretation of the facts and their relevance. (Doc. 44 at 13-14). She states:

> It is undisputed that Equifax was reporting Plaintiff's FSB account as being 60 days late *as of September 2017*. (Starnes Depo., p. 89:18-20)....
>
> However, *FSB reported to Equifax that Plaintiff was not 60 days late in September 2017, but, rather, that she was "current" at that time*. (Henderson Depo. pp. 36:17-37:2). . . . A genuine issue of material fact exists with regard to the reasonableness of Equifax's procedures when the evidence is that *Equifax was inaccurately reporting the status of Plaintiff's account as 60 days late in September 2017* despite FSB telling Equifax that the account was current.

(*Id.*). Ms. Berry has offered no evidence concerning how Equifax was reporting the FSB account in September 2017, and Equifax's reporting in September 2017 is irrelevant to this case because Ms. Berry was not seeking a loan from Ms. Starnes in September 2017. What matters is how Equifax was reporting the FSB account in January 2018. Equifax's records show that at the time it received Ms. Berry's dispute, the Account reported with a status of M1 (green box), which means "Pays As Agreed," and also reported as "Closed Or Paid Account/Zero Balance" (yellow box).

```
FIRST STATE BANK- S.  122017 092007   23500                          M1  99 J 09/2017
                        09/2017        975 281         10Y M 26 B
         DFD/DLA       PURCH/SOLD/ORIGINAL CREDITOR        AUI
         09/2017 O   *
         BAL AMT     BAL PAY DT  DEF PAY DT  CC

                                            ACCT# REDACTED 3164
         CLOSED OR PAID ACCOUNT/ZERO BALANCE
         REAL ESTATE MORTGAGE

DEROG TRADE HISTORY
09/2017-2 08/2017-1 03/2017-1 02/2017-3 01/2017-2 12/2016-1 11/2016-1 04/2016-1
02/2016-1 12/2015-1 05/2014-1 03/2014-1 02/2014-1 11/2013-1
```

(Declaration of Celestina Gobin ("Gobin Dec."), Doc. 40-1, ¶ 46; Doc. 40-4).

Ms. Berry also misinterprets the reporting of the status of the FSB account with the trade history of the FSB account. The status is the condition of the account when last updated by the creditor or otherwise. (*Id.*, ¶ 47). The status of an account is different from the "Account History," also known as "Derog Trade History." (*Id.*, ¶ 48). Unlike status, which is a reflection of an account's current condition, "Account History" or "Derog Trade History" is the payment history and historical account information for an account. (*Id.*, ¶ 49). Equifax's records show that at the time it received Ms. Berry's dispute, FSB reported the following Derog Trade History (blue box): 60 days late for September 2017 on the date that FSB reported the Account to Equifax, 30 days late for August 2017, 30 days late for March 2017, 90 days late for February 2017, 60 days late for January 2017, 30 days late for December 2016 and so on all the way back to 30 days late for November 2013. (*Id.*, ¶¶ 50, 52).

Moreover, Ms. Berry has offered no evidence concerning how FSB was reporting the FSB account to Equifax after September 2017. The asterisk (*) symbol (purple box) next to the First State Bank tradeline indicates that the information in the FSB account was last updated by First State Bank via their normal, organic, monthly update process and not via an off-cycle or "manual" update such as via an ACDV or AUD dispute form. (Doc. 40-5 at 16 n.26). Accordingly, the information concerning the 60-day late payment for September 2017 was supplied by FSB, not created by Equifax, and as stated above, Equifax is entitled to rely on information furnished by FSB. *See Thomas*, 214 F. Supp.

2d at 1234 (citing *Henson*, 29 F.3d at 285). Accordingly, the Court should grant summary judgment in Equifax's favor on this issue.

### III. Ms. Berry Failed to Establish That Equifax Willfully Violated the FCRA.

Even if Mr. Tripathi did not handle Ms. Berry's dispute of the 60-day late payment in accordance with Equifax's procedures, it does not mean that Equifax willfully violated the FCRA. And because the loan was already being reported with a zero balance Mr. Tripathi did not cause a dispute form or "ACDV" to be sent to FSB. At most, Ms. Berry has demonstrated nothing more than an isolated human error that does not warrant the imposition of punitive damages.

In her Response, Ms. Berry complains about a procedure that she argues Equifax should not have used in these circumstances but does not materially change the outcome. (Doc. 44 at 15-19). Ms. Berry next cites cases analyzing whether a CRA negligently violated § 1681i(a) to argue that Equifax willfully violated § 1681i(a). (*Id.* at 17). This is a non-sequitur. A negligent violation of the FCRA does not prove a willful violation of the FCRA.

Moreover, Ms. Berry wholly fails to acknowledge that § 1681i(a)(1)(A) gives CRAs the option to reinvestigate dispute information or delete the disputed information. 15 U.S.C. § 1681i(a)(1)(A). Accordingly, when a consumer disputes a balance on an account, § 1681i(a)(1)(A) permits a CRA to change the balance to $0 (or leave it at $0) without conducting a reinvestigation, as permitted by the policy that Ms. Berry attacks.

Similarly, § 1681i(a)(1)(A) permits a CRA to change the spelling of a consumer's name or the digits in the consumer's phone number without sending an ACDV to the furnisher of such information. *Id.* Accordingly, the Court should grant summary judgment in Equifax's favor and dismiss Ms. Berry's claims against it.

## CONCLUSION

For the foregoing reasons and those included in its Motion, Equifax requests that its Motion be granted, and Ms. Berry's Motion for Partial Summary Judgment be denied.

Respectfully submitted this 23rd day of July, 2019.

| | |
|---|---|
| */s/ Norman Charles Campbell, II* | */s/ Kirkland E. Reid* |
| J. Anthony Love | Kirkland E. Reid |
| Norman Charles Campbell , II | Jones, Walker LLP |
| KING & SPALDING LLP | 11 N. Water Street, Suite 1200 |
| 1180 Peachtree Street, N.E. | Mobile, AL 36602 |
| Atlanta, GA 30309 | 251-439-7513 |
| 404-572-2748 | Email: kreid@joneswalker.com |
| Fax: 404-572-5100 | |
| Email: tlove@kslaw.com | |
| Email: ccampbell@kslaw.com | |
| | *Counsel for Defendant* |
| | *Equifax Information Services LLC* |