FILED
2020 Mar-23 PM 03:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ANITA BERRY, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-356-KOB |
| ) | |
| EQUIFAX INFORMATION ) | |
| SERVICES LLC, ) | |
| ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION**

This matter comes before the court on Plaintiff Anita Berry's "Motion for Partial Summary Judgment," (doc. 37), and Defendant Equifax Information Services LLC's "Motion for Summary Judgment," (doc. 40). Ms. Berry argues that Equifax has effectively admitted to negligence under the Fair Credit Reporting Act, while Equifax argues that Ms. Berry has not shown that Equifax caused her any damages or engaged in legally actionable wrongdoing. For the reasons stated below, the court DENIES both motions.

**I.      Factual Background**

In 2007, Ms. Berry and her husband applied for and received a mortgage loan from First State Bank of Dekalb County. (Doc. 1 at 3). Ms. Berry failed to make payments on the mortgage in June and July of 2017 but made a $900 payment in August of 2017 that relieved all delinquencies. In September of 2017, Ms. Berry paid off the entirety of the mortgage loan. In a deposition, a representative for First State Bank testified that, in September 2017, First State Bank reported to Equifax, a credit reporting agency, that Ms. Berry's loan payments were up to date. (Doc. 37-2 at 12).

1

In either December 2017 or January 2018, Ms. Berry applied for a new mortgage loan to buy a new home. Beverly Starnes, the loan officer, ran a credit check and the credit report provided by Equifax inaccurately stated that Ms. Berry was 60 days delinquent on her previous mortgage as of September 2017, rather than as of August 2017. On January 31, 2018, Ms. Starnes denied Ms. Berry a mortgage loan.

Ms. Starnes testified in a deposition that when a mortgage applicant has a 60-day late payment, the applicant typically will have to wait until more than 12 months from the date of the 60-day late payment to obtain a mortgage. (Doc. 37-3 at 39). Ms. Starnes stated that she denied Ms. Berry a mortgage because of the reported September 60-day late payment. (*Id.* at 44). However, she went on to state that she would still have denied the application if the 60-day late payment had been reported accurately for August based on missed payments in June and July, rather than inaccurately for September based on missed payments in July and August. (*Id.* at 45).

On January 31, 2018, Ms. Berry wrote to Equifax to dispute the information in her credit report that indicated that she was 60 days delinquent on her previous mortgage as of September 2017. Ms. Berry attached information showing that she had paid off the mortgage in September 2017, and thus she was not 60 days late on the mortgage as of September 2017. Equifax outsourced Ms. Berry's letter to a separate company in India called Intelenet. (Doc. 39-9 at 6–7). An Intelenet employee named Umesh Tripathi processed Ms. Berry's letter and decided that Ms. Berry was disputing the current balance of the mortgage as stated on her credit report, rather than the late payment status for September 2017. (*Id.* at 8, 13).

In her deposition, Equifax's corporate representative Celestina Govin stated that Mr. Tripathi's failure to include a late-payment element in the dispute was an error and that he should

have done more. (*Id.* at 13). Ms. Govin also admitted that a 60-day late notation is an adverse item on a credit report that can affect a consumer's credit. (Doc. 39-9 at 13). She stated that Equifax did not send Ms. Berry's dispute to First State Bank for reverification, which was a mistake. (Doc. 39-9 at 14).

On February 8, 2018, Equifax sent Ms. Berry a letter stating that it had reinvestigated her dispute. (*Id.*). Ms. Govin clarified that reinvestigation did occur and that Equifax did not think that Ms. Berry's dispute was "frivolous or irrelevant." (*Id.* at 15). However, Equifax did not remove the erroneous 60-day late notation. (*Id.*). Further, Equifax did not contact First State Bank so that it could conduct an investigation. (Doc. 37-2 at 13–15). Ms. Govin stated that it is Equifax's policy not to reach out to information-furnishing bodies like banks when a dispute is merely "cosmetic" and deals with whether an account has a zero balance, though it does send notice for correctly flagged late-payment disputes. (*Id.* at 17–18).

Ms. Berry testified in a deposition that Equifax's wrong-doing caused her to lose the home loan that she sought in January 2018. (Doc. 37-4 at 44). She testified that she was not seeking to recover from Equifax for any other loss of credit. (*Id.*). Ms. Berry stated that backing out of the deal with the sellers of the house caused her "humiliation and embarrassment." (*Id.*). Ms. Berry also stated in her deposition that, at that moment, she could not think of other "mental and emotional pain and anguish [she hadn't] already mentioned" that she could attribute to Equifax. (*Id.*). Ms. Berry later testified that the "loss of the house" she was attempting to buy and the knowledge that her husband was worrying about her future affected her sleep, her appetite, and her nerves. (Doc. 37-4 at 52–53).

Ms. Berry stated in responses to interrogatories and in a later affidavit, however, that Equifax's actions in generating an inaccurate report and failing to properly investigate her

3

dispute, even other than the loss of the mortgage, caused her physical and emotional harm characterized by insomnia, anxiety, stress, loss of appetite, and tension headaches. (Doc. 44-1 at 3). She stated in her affidavit that the only reason she had not been more clear about those damages in her deposition was that she was not specifically asked about her damages outside of the loss of the mortgage.

Ms. Berry also filed an affidavit from her daughter. (Doc. 44-2). Ms. Berry's daughter stated that she witnessed how upset and "despondent" Ms. Berry was upon receiving the letter from Equifax denying any error in her credit report. (Doc. 44-2 at 3). Ms. Berry's daughter stated that the incident caused her mother so much stress and anxiety that she feared Ms. Berry might have a heart attack. Ms. Berry's daughter said that, upon receipt of the letter, Ms. Berry worried that Equifax's failure to investigate and correct her credit report would keep her from buying a house before her husband passed away.

Ms. Berry filed this lawsuit against Equifax and First State Bank pursuant to the FCRA, although Ms. Berry later voluntarily dismissed her claims against First State Bank. (Doc. 1; doc. 25). Ms. Berry alleges that Equifax's actions negatively reflected on her, "caused or contributed to cause her to be denied a mortgage loan" and lose other credit, and caused her "mental and emotion pain and anguish." (Doc. 1 at 5–6). Ms. Berry alleges that Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure accurate credit reporting. Further, Ms. Berry alleges that Equifax violated 15 U.S.C. § 1681i(a)(1)(A) by failing to delete inaccurate information, failing to conduct an appropriate reinvestigation, failing to forward relevant information to First State Bank, failing to maintain reasonable procedures, and relying on information from an unreliable source. Ms. Berry asserts that Equifax was either willful under 15 U.S.C. § 1681n or negligent under § 1681o.

## II.     Standard of Review

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and, if not, whether the moving party is entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). But, inferences can create genuine issues of material fact. *Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

5

designate 'specific facts showing that there is a *genuine issue for trial.*'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury. *See id.* at 255.

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## III. Discussion

### a. *Ms. Berry's Motion for Partial Summary Judgment*

In her motion for partial summary judgment, Ms. Berry argues that no issue of material fact exists regarding Equifax's negligence under § 1681o for failing to conduct an appropriate investigation of her credit dispute, in violation of § 1681i(a). (Doc. 37). Ms. Berry asserts that Equifax's policy of not sending some disputes to the furnishers of information—in this case First State Bank—violated the FCRA's requirement that credit reporting agencies perform a "reasonable reinvestigation" of disputes. She argues that Equifax admits that Mr. Tripathi negligently mishandled Ms. Berry's dispute and failed to provide First State Bank with information regarding the dispute. Ms. Berry admits that the issues of willfulness and damages should be submitted to a jury.

Equifax filed a response, arguing that Ms. Berry cannot make the requisite showing of damages or causation to show liability for a violation of § 1681i(a) because her mortgage application would have been denied regardless of its conduct. (Doc. 46). Equifax also asserts that its allegedly negligent reinvestigation took place after Ms. Berry's mortgage application was denied, so the reinvestigation could not have caused the denial.

Ms. Berry did not file a reply.

The purpose of the FCRA is to make sure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit […] and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). "The FCRA creates a private right of action against consumer reporting agencies for the negligent, *see* 15 U.S.C. § 1681o, or willful, *see* 15 U.S.C. § 1681n, violation of any duty imposed under the statute." *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); 15 U.S.C. §§ 1681n, 1681o. Sections 1681n and 1681o "allow recovery for actual damages and attorneys' fees and costs, as well as punitive damages in the case of willful noncompliance." *Heupel v. Trans Union LLC*, 193 F. Supp. 2d 1234, 1238–39 (N.D. Ala. 2002); 15 U.S.C. §§ 1681n, 1681o.

Section 1681i(a)(1)(A) of the FCRA provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file […] before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

The credit reporting agency must notify the data furnisher within five business days of "all relevant information regarding the dispute" that the credit reporting agency has received from the consumer. *Id.* § 1681i(a)(2). The credit reporting agency then must review and consider the information submitted about the dispute, promptly delete or modify inaccurate information, and promptly provide the consumer with notice of the results of the reinvestigation. *Id.* § 1681i(a)4–6. However, the credit reporting agency can terminate a reinvestigation of a dispute if it finds that the dispute is "frivolous or irrelevant," though the agency must give notice to the consumer of such a determination. *Id.* § 1681i(a)(3).

The FCRA does not make consumer reporting agencies strictly liable for all inaccuracies, but instead creates a private right of action only for negligent or willful violations of the FCRA. *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *see* 15 U.S.C. §§ 1681n(a), 1681o(a). Because liability is not strict, the failure to produce evidence of damages resulting from an FCRA violation in a case alleging negligent violation of the FCRA "mandates summary judgment." *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1306–07 (11th Cir. 2002). The burden is on the plaintiff to show that the defendant's FCRA violations caused the plaintiff damages. *See Jackson v. Equifax Info. Servs., LLC*., 167 F. App'x 144, 146 (11th Cir. 2006) (holding that the plaintiff had not shown that an inaccurate report caused his denial of credit).

While the court notes without deciding that it appears that Equifax may have negligently failed to comply with the requirements of § 1681i(a) in this case, Ms. Berry nonetheless fails to show that she is entitled to summary judgment on the matter because a genuine issue of material fact remains regarding whether she can show that she suffered damages caused by Equifax. Ms.

Berry's motion fails in large part because the court agrees with Equifax that Ms. Berry cannot rest a claim for relief under the FCRA on the denial of her mortgage in January 2018.

As an initial matter, Equifax correctly points out that any failure to perform an adequate reinvestigation of Ms. Berry's credit dispute as required by § 1681i(a) could not have caused the denial of Ms. Berry's mortgage application. Ms. Starnes denied Ms. Berry's mortgage application at the end of January 2018, which prompted Ms. Berry to send a dispute letter to Equifax. Equifax did not send its letter reporting no inaccuracies in Ms. Berry's credit report to her until February 2018. Therefore, no causal relationship can exist between Equifax's reinvestigation responsibilities under § 1681i(a) and the denial of Ms. Berry's mortgage in January 2018.

Additionally, testimony from Ms. Starnes establishes that she would have had to deny Ms. Berry's mortgage application based on her 60-day late status even if it had been correctly reported for August instead of incorrectly reported for September. (Doc. 37-3 at 39); (Id. at 45). So, even if the credit report produced by Equifax had been accurate, Ms. Starnes would have denied Ms. Berry's mortgage application. Accordingly, Ms. Berry cannot show that the loss of the mortgage loan—or any emotional or physical distress caused by that loss—constituted actual damages attributable to Equifax, as she could not have obtained the loan regardless of Equifax's reinvestigation obligations. Ms. Berry, therefore, cannot use the denial of her mortgage application to show damages or causation for her negligence claim under § 1681o for violations of § 1681i(a).

However, the record before the court shows that the loss of the mortgage and attendant distress were not the *only* damages that Ms. Berry asserted. Sworn testimony from both Ms. Berry and her daughter states that the receipt of Equifax's letter denying any inaccuracies in Ms.

Berry's credit report independently caused Ms. Berry physical and emotional distress outside of the loss of the mortgage. Ms. Berry argues that these assertions of emotional and physical distress suffice to show damages and to allow the court to grant summary judgment; Equifax argues that Ms. Berry's assertions of physical and emotional distress are self-serving, unsubstantiated, and not credible.

When ruling on a motion for summary judgment, the court must view all evidence and inferences in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282; *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (stating that, at the summary judgment stage, courts must credit the nonmoving party's version of disputed facts, even if the evidence is of questionable veracity, because credibility determinations are the province of the jury). In assessing Ms. Berry's motion, the court views the evidence in the light most favorable to Equifax.

In her deposition testimony, Ms. Berry strongly indicated that the only damages that she was seeking to recover were related to the loss of her mortgage. Specifically, she stated in her deposition that she was not seeking to recover for any other loss of credit, that backing out of the deal with the people selling her prospective home caused her humiliation, and that the loss of the prospective house caused her symptoms of physical and emotional distress. (Doc. 37-4 at 44; 52-53). Further, she stated that she could not think of any other damages for which she wished to recover from Equifax. (*Id.* at 44). Although Ms. Berry also produced other evidence in the form of affidavits that asserted that she suffered damages specifically based on Equifax's failure to adequately reinvestigate her credit dispute, the implication of her deposition testimony—when viewed in the light most favorable to Equifax—provides sufficient evidence on which a jury could reasonably find for Equifax. *Anderson*, 477 U.S. at 254.

At the summary judgment stage, this court cannot decide whether Ms. Berry made the necessary showing of damages stemming from Equifax's alleged violations of § 1681i(a) because the issue rests on a credibility determination that must go to the jury. *Id.* at 255; *Feliciano*, 707 F.3d at 1252. Thus, a genuine issue of material fact regarding whether Ms. Berry established the necessary damages to support liability under § 1681o precludes judgment as a matter of law. *See* Fed. R. Civ. P. 56. Accordingly, the court DENIES Ms. Berry's motion for partial summary judgment.

### b. Equifax's Motion for Summary Judgment

In its own motion for summary judgment, Equifax argues that the court should grant it summary judgment on the entirety of Ms. Berry's complaint because the evidence does not support a finding of liability. (Doc. 40). Equifax makes multiple arguments for summary judgment, which the court addresses in turn.

### 1. Failure to Show Damages

Equifax begins its motion for summary judgment by arguing the logical extension of its response to Ms. Berry's motion for partial summary judgment: Ms. Berry cannot show damages or causation to support any of her FCRA claims because she would not have received the mortgage at issue even without an inaccuracy on her credit report. (Doc. 40). Equifax goes on to assert that Ms. Berry's claimed emotional damages are speculative and unsupported by credible evidence.

Ms. Berry filed a response in opposition, in which she argues that the court should focus on the inaccuracy in her credit report, not whether an August or September 60-day late payment would have made a practical difference. (Doc. 44). She asserts that Equifax's conduct damaged her beyond just the denial of the mortgage and that whether she experienced damages is a

11

question for the jury.  She also argues that she need not show actual damages to recover for willful conduct.  Ms. Berry included affidavits from herself and her daughter along with her response, asserting that she experienced emotional and physical distress directly because of Equifax's actions.

Equifax filed a reply arguing that, contrary to Ms. Berry's response and the evidence she attached, all of her alleged damages arose from the denial of her mortgage application in January 2018—not its conduct.  (Doc. 47).

As discussed above, § 1681i(a) of the FTCA requires consumer reporting agencies to conduct specifically dictated reinvestigations of consumer credit disputes.  15 U.S.C. § 1681i(a).  Section 1681e(b) of the FTCA requires that consumer reporting agencies preparing consumer reports "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

To recover under § 1681o for negligent violation of either § 1681i(a) or § 1681e(b), a plaintiff must show evidence of damages caused by the defendant's violation of the FCRA.  *Nagle*, 297 F.3d at 1306–07; *Heupel*, 193 F. Supp. 2d at 1239.  Further, "[a]ctual damages may include mental distress, even in the absence of out-of-pocket expenses." *Younger v. Experian Info. Sols., Inc.*, No. 2:15-CV-00952-SGC, 2017 WL 5465527, at *5 (N.D. Ala. Sept. 22, 2017) (citing *Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d. 1228, 1235 (M.D. Ala. 2002); *Jordan v. TransUnion, LLC*, 2006 WL 1663324, at *7 (N.D. Ga. Jun. 12, 2006)).  Where a violation of the FCRA is willful, however, the FCRA provides for statutory damages, attorneys' fees, costs, and other forms of relief without requiring a showing of actual damages. 15 U.S.C. § 1681n; *Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1124–25 (11th Cir. 2006).

Because of the specific lens through which courts must view motions for summary judgment, the same weakness that doomed Ms. Berry's motion for partial summary judgment—a credibility issue—thwarts Equifax's first argument for summary judgment. Just as the court viewed the evidence in the light most favorable to Equifax above, in this context the court must view the evidence in the light most favorable to Ms. Berry, the nonmovant. *Graham*, 193 F.3d at 1282. Viewing the evidence in the light most favorable to Ms. Berry, she has established a genuine issue of material fact regarding whether she experienced damages from Equifax's alleged violation of the FCRA.

As discussed above, Ms. Berry cannot show that Equifax caused her any damages relating to the loss of her mortgage because the mortgage would have been denied regardless of any inaccurate reporting or inadequate reinvestigation by Equifax. (Doc. 37-3 at 39); (Id. at 45) (deposition of Ms. Starnes). However, Ms. Berry also produced sworn testimony from herself and her daughter indicating that that the inaccuracy on Ms. Berry's credit report, as well as Equifax's failure to adequately investigate and correct the inaccuracy, caused Ms. Berry emotional and physical distress. (Doc. 44-1; doc. 44-2). That evidence suffices to overcome Equifax's motion for summary judgment.

Equifax argues that the court should grant its motion for summary judgment because Ms. Berry's assertions that Equifax's actions caused her emotional and physical distress are speculative, unsupported by credible evidence, and self-serving. However, courts "routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving." *Feliciano*, 707 F.3d at 1253 (quoting *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir.), *as modified on denial of reh'g*, 425 F.3d 1292 (11th Cir. 2005)).

13

Ms. Berry's affidavit, which is corroborated by her daughter's, asserts that she experienced specific mental and physical symptoms of stress that arose from her inaccurate credit report and Equifax's failure to correct the inaccuracy. Further, Ms. Berry's deposition testimony does not conclusively foreclose the affidavit testimony at this stage in the proceedings. Ms. Berry stated in her affidavit that she did not mention the damages from Equifax's letter because she was not specifically asked what damages she attributed to Equifax in this case. (Doc. 44-1). While Ms. Berry did state in her deposition that she could not think of any damages outside of the mortgage for which she was trying to recover from Equifax, the questions during the deposition did point Ms. Berry's focus to the loss of her mortgage. (Doc. 37-4 at 44). Therefore, the affidavits submitted by Ms. Berry and her daughter do not necessarily conflict with Ms. Berry's deposition testimony and the issue merits development by means of cross-examination at trial and resolution by a jury.

Ms. Berry's affidavits submitted with her response to Equifax's motion for summary judgment provide alleged facts that create "a *genuine issue for trial.*" *Celotex*, 477 U.S. at 324. The credibility of Ms. Berry's alleged facts presents a question for the jury, not for the court on summary judgment. *See Anderson*, 477 U.S. at 254. Therefore, none of Ms. Berry's claims fail as a matter of law because of a failure to show damages, especially not her claims for willful violation of the FCRA under § 1681n, which do not even require a showing of actual damages. *See* Fed. R. Civ. P. 56; 15 U.S.C. § 1681n; *Levine*, 437 F.3d at 1124–25. Thus, the court DENIES summary judgment on this issue.

2. Reasonable Procedures

Equifax also argues that Ms. Berry failed to show that it did not follow reasonable procedures to assure maximum credit reporting accuracy under § 1681e(b), as it reasonably

14

relied on reports from First State Bank. Ms. Berry responds that First State Bank reported that her account was not late in September 2017, so Equifax cannot argue that it was simply relying on information from First State Bank that it believed to be reliable. Equifax replies that, based on Equifax's own records, First State Bank was the one who reported that Ms. Berry's account had a 60-day late payment in September 2017. The court finds that it cannot resolve at this juncture whether Equifax followed reasonable procedures as a matter of law.

To show a *prima facie* violation of § 1681e(b) "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information." *Cahlin*, 936 F.2d at 1156. Nevertheless, the FCRA's lack of strict liability means that even if a credit reporting agency generated an inaccurate report, the agency can escape liability by showing that it followed reasonable procedures, "which will be a jury question in the overwhelming majority of cases." *Id.*; *Heupel*, 193 F. Supp. 2d at 1239.

In this case, neither party disputes the inaccuracy of the credit report stating that Ms. Berry was 60 days late on her mortgage as of September 2017 when she had actually remedied her outstanding late payments in August and paid off the entire mortgage in September. Thus, the important question becomes whether Equifax followed reasonable procedures. Equifax argues that its procedures were reasonable because, based on the way it codes its own documents, its records show that First State Bank reported that Ms. Berry was 60 days late on her mortgage in September 2017.

The record lacks complete clarity on the precise provenance of the information indicating that Ms. Berry was 60 days late on her payment in September 2017. In making its argument, Equifax relies on a report from an expert stating, without further specific explanation, that "Equifax did not cause the a 60-day late payment, or any other late payment, to appear on the

15

Plaintiff's First State Bank tradeline at Equifax […] First State Bank affirmatively reported all of the late payments associated with the Plaintiff's mortgage loan. Further, it *appears* that First State Bank changed the dates […] ." (Doc. 40-5 at 19) (emphasis added). In its motion for summary judgment, Equifax writes that "it *appears* [First State Bank] changed the dates of the Ms. Berry's multiple late payments by one month each, sometime between July 22, 2017 and February 1, 2018 as part of their normal monthly tape updates." (Doc. 40 at 29) (emphasis added). Equifax suggests that the inaccurate information must have been submitted by First State Bank, but fails to show exactly when or how. Further clouding the issue, a representative of First State Bank testified that, in September 2017, First State Bank reported that Ms. Berry was current on her mortgage payments. (Doc. 37-2 at 12).

When viewed in light of the fact that the reasonableness of a credit reporting agency's procedures presents a question for the jury in the "overwhelming majority" of cases, the reasonableness of Equifax's procedures in this case—in which it is not abundantly clear where the inaccurate information came from or whether Equifax should have noticed and fixed the erroneous report—presents a question for the jury. *See Cahlin*, 936 F.2d at 1156; *Heupel*, 193 F. Supp. 2d at 1239. Accordingly, the court DENIES summary judgment on this issue.

    3. <u>Failure to Show Willfulness</u>

Finally, Equifax argues that Ms. Berry has not made the necessary showing of recklessness to support an allegation of willful violation of the FCRA under § 1681n. (Doc. 40). Equifax argues that Ms. Berry cannot succeed on claims for willfulness when even her claims for negligence fail and that she cannot show any reckless behavior. Ms. Berry responds that a jury must decide whether Equifax acted recklessly and willfully under § 1681n. (Doc. 44). Like the

16

reasonableness of Equifax's procedures, the court finds that the question of Equifax's potential recklessness should be put to the jury.

Under the FCRA, willfulness requires either a knowing or reckless violation of law. *See Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 57-59 (2007). Recklessness is "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68 (internal quotation marks omitted). A credit reporting agency subject to the FCRA "does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

Equifax argues that there could be no willful violation in this case because Ms. Berry's claims for mere negligence all fail. That particular argument fails to carry the day because of the court's decision that Equifax is not entitled to summary judgment on Ms. Berry's other claims.

Equifax also argues that the only error in this case was a human error by Mr. Tripathi, which does not amount to willful flouting of the FCRA. Ms. Berry, on the other hand, argues that a jury must decide whether Equifax willfully violated § 1681i(a) through its policy of not sending notice of disputes to information furnishers. Equifax asserts that § 1681i(a)(1)(A) contains an exception that does not require providing notice to information furnishers where a credit reporting agency is simply changing a consumer's balance to $0, maintaining a consumer's balance at $0, or doing something clerical like changing the digits in a consumer's phone number. (Doc. 47 at 12).

As mentioned above, § 1681i(a)(1)(A) requires that a credit reporting agency conduct a reasonable reinvestigation to determine whether disputed information is inaccurate if a consumer

17

disputes "the completeness or accuracy of any item of information contained in a consumer's file." 15 U.S.C. § 1681i(a)(1)(A). However, § 1681i(a)(1)(A) also states that, as an alternative to reinvestigation, the agency can delete a disputed item from a credit file in accordance with § 1681i(a)(5).

Section 1681i(a)(5) of the FTCA provides that, in general, after reinvestigation of a dispute, a credit reporting agency can delete or modify an item found to be inaccurate, incomplete, or unverifiable. 15 U.S.C. § 1681i(a)(5). However, the credit reporting agency must promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer. *Id.*.

Additionally, under § 1681i(a)(2) of the FCRA, a credit reporting agency that receives notice of a dispute from any consumer must generally notify the furnisher of the disputed information, including "all relevant information regarding the dispute that the agency has received from the consumer or reseller," within five business days. 15 U.S.C. § 1681i(a)(2). The statute provides an exception if the credit reporting agency determines that the dispute is "frivolous or irrelevant" and specifically notifies the consumer of such finding. *Id.* § 1681i(a)(3).

The evidence shows, and the parties do not dispute, that Equifax did not find Ms. Berry's dispute to be frivolous or irrelevant; so, her dispute could not qualify for that exception to the FCRA's notice requirement. (Doc. 39-9 at 15); 15 U.S.C. § 1681i(a)(3). After examining § 1681i(a) and Equifax's arguments, the court cannot find a clear basis for Equifax's argument that any exception applies to the requirement under § 1681i(a) to provide notice to information furnishers like First State Bank where a consumer dispute is not found to be frivolous or irrelevant. Both § 1861i(a)(2) and § 1861i(a)(5) require that credit reporting agencies give notice

18

of disputes to information furnishers.  Nevertheless, Equifax did not notify First State Bank of the dispute. (Doc. 37-2 at 13–15).  In fact, Equifax's corporate representative went so far as to say that Equifax does not provide notice to information furnishers in cases of "cosmetic disputes"—for example, Ms. Berry's dispute as understood by Mr. Tripathi, in which her account balance was reporting zero—as a matter of policy. (Doc. 39-9 at 16–17).  The court fails to see an apparent notice exception in the text of § 1681i(a) that provides for such a policy.

Because of the lack of a clear exception to the notice-to-information-furnishers requirement, a reasonable jury could find that Equifax's policy constitutes a knowing or reckless violation of the law that amounts to willful violation of the FCRA under § 1681n. *See Safeco*, 551 U.S. at 57-59.  A genuine issue of material fact exists regarding whether the notice requirements of the FCRA are sufficiently clear that not sending notice to information furnishers for "cosmetic" disputes shows that Equifax "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.  Accordingly, because a genuine issue of material fact still exists regarding Equifax's alleged willful violation of the FCRA, the court DENIES Equifax's motion for summary judgment. *See* Fed. R. Civ. P. 56.

## IV. Conclusion

For the reasons stated above, the court DENIES Plaintiff Ms. Berry's motion for partial summary judgment.  The court also DENIES in its entirety Defendant Equifax's motion for summary judgment.  The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 23rd day of March, 2020.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE